Pittsburg Iron & Steel Engineering Company *v.* National Tube Works Company, Appellant.

*Contract—Building contract—Delay—Liquidated damages—Evidence—Case for jury.*

In an action to recover a balance alleged to be due upon a building contract defendant set up as a defense a claim for liquidated damages for delay under the terms of the contract, and the evidence for the plaintiff, although contradicted, tended to show that the delay was caused by the fault of the defendant in not preparing foundations in accordance with its agreement, and in making extensive changes in the original plans, thus prolonging the work. *Held*, that the case was for the jury.

Where a building contract provides for liquidated damages for delay, the fact that the conduct of the owner has caused delay does not relieve the contractor, as soon as such cause has ceased, from speedily finishing the work, and failure to do so will warrant the owner in invoking the claim for liquidated damages for every day of unreasonable delay thereafter.

Argued Nov. 4, 1897. Appeal, No. 145, Oct. T., 1897, by defendant, from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1895, No. 389, on verdict for plaintiff. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit on a building contract. Before PORTER, J. The facts appear by the opinion of the Supreme Court.

The charge of the court below was in part as follows:

[If this defendant was in default in furnishing the foundations, then it would waive the benefit of this covenant in the contract, unless its failure to furnish the foundations in time was caused by the failure of the plaintiff to furnish the plans within a reasonable time.] [6] If the plaintiff failed to furnish plans within a reasonable time, then the defendant could go on, after having gotten the plans, using due diligence, to finish the foundations, and if it did that, and completed the foundations with due diligence, after getting the plans, then the plaintiff would still be bound by this covenant in the agreement, although the defendant may not have had the foundations completed at the time named in the contract. But if the defendant failed to furnish those foundations within the time named in the contract, then the burden is upon it to satisfy you that such failure was the result of the failure of the plaintiff to do what it ought to have done. And if the plaintiff furnished the plans with reasonable promptness after the contract was made, that was all that was required of it with regard to those plans. [The plaintiff says further that this contract was so altered, after it was made, as to operate as a waiver of this covenant within the contract for liquidated damages; in other words, that the parties, by mutual consent, so changed the contract as to necessarily cause delay in its completion beyond the period that had been limited in the contract; that there was not a reasonable probability of its completing the contract within

the time, because of these changes.  We say to you, gentlemen, as to the substitution of one engine for another, and as to the amendment of the specifications referring to the blooming mill, and as to the hydraulic bloom shear, that those changes being enumerated in exhibit "9," in which the manager of the defendant company accepted a proposition that had been tendered by the plaintiff, specifying " The foregoing is to be considered a part of the original contract and the payments will be changed accordingly," made that a part of the original contract just as much as if it had been written in, and it was simply the substitution of one engine for another, and one mill for another, and the contract for the shears becomes as binding and as much a part of the original contract as if it had been written in it, and for that change there could be no extension of time.

As to the changes which were made during the progress of the work, that is, the substitution of one thing for another that has been specified in the original contract, if the parties agreed, without saying anything as to time, simply to substitute one thing for another, without any mention of additional time—simply agreed that one machine should be put in place of another, as that a Gates crusher should be put in in place of a Blake crusher, then, in the absence of any evidence that would satisfy the jury that the defendant knew or ought to have known that that would render an extension of time necessary, there would be no extension of time under such circumstances.  The first change seems to have been a change in the buildings ; it was a change in the dimensions, where they agreed to substitute a building that was possibly somewhat larger, and nothing was said about an extension of time because of that substitution. Where the plaintiff did not, at the time that the substitution was suggested and agreed upon, suggest additional time, then unless the jury are satisfied from the evidence that the defendant knew or ought to have known that that would necessarily require more time to do, and so prevent the completion of the contract within time, no extension of time would be allowed for those changes.  The parties were able to contract for themselves ; and the plaintiff could not have been required to make these changes after it had entered into this contract.  If it did agree to the changes, the parties mutually consenting to these changes in dimensions, then that would not operate as a waiver

of this clause for liquidated damages, unless the change was of such a nature that the parties would be presumed from that very fact to know that it would render the completion within time not reasonably probable.] [8]

[As to the additions, gentlemen, where something outside of the contract was agreed upon by the parties and a price stipulated for it, the only thing that the plaintiff would be required to do with regard to that addition would be to finish that addition within a reasonable time. It is something outside of its contract. Something has been said about a mixing house which was not named in the original contract. All it would be required to do would be to finish that within a reasonable time. For those things which were outside of the original contract, it would only be required to finish them within a reasonable time, and if it did not get those additions finished before the 1st of June, it would not incur any penalty, because the additions were not finished, nor would it be liable to answer in damages for the noncompletion of those additions, until after a reasonable time for the completion of the additions had elapsed. If the additions were so mixed with the original contract that the doing of that work necessarily delayed the original contract, then the parties would be presumed to contract with a knowledge of that fact, that is, to contract for the additions with a knowledge of that fact; and if those additions were so commingled with the main contract that they would necessarily, or in all reasonable probability, result in the delay of the completion of the original contract, then the plaintiff would not be answerable in damages for such delay.] [9]   So that you will at once apprehend, gentlemen, that it is important for you to determine, after the question as to whether or not there was delay, and after determining the question whether or not this defendant caused the delay because of its failure to furnish foundations, if you find that there was delay, and that the defendant was not responsible for that delay because of its failure to furnish foundations in time, or if you find that it did fail to furnish the foundations in time but that that failure was caused by the plaintiff's failure to furnish plans, then it is important for you to inquire carefully as to what remained unfinished on this plant. If the original contract, including that part of it which had been added by agreement afterwards with regard to the

blowing engine, was completed on the 1st of June, and if those things that remained uncompleted were simply additions that had been ordered afterwards, then the clause for liquidated damages would not operate. And on the other hand, if the additions and changes or substitutions were all practically completed by the 1st of June, and the only thing that remained uncompleted was something that was clearly within the original contract and was not delayed by additions, then you would probably hardly find it necessary to inquire as to the effect of the additions upon the extension of time. [The blowing engine that was put in was substituted for one mentioned in the origiral agreement, and by the terms of that substitution it was to be taken as a part of the original agreement. Now, what was the cause of the delay in the completion of this plant? If, under the evidence, you are satisfied that it was the blowing engine, and the blowing engine alone, then, gentlemen, you will consider carefully whether any of this new work, this additional work, caused any delay in the blowing engine. If all this new work was completed on the 1st of June, and if it did not cause any of the delay whatever, and if you find further that it did not cause any delay to the blowing engine, then of course, the mere fact that new work was added, but was all gotten in in time, and within the contract, and did not delay the completion of the original contract, would have no effect upon the case, but if, because of some connection of this new work with the blowing engine, it delayed that engine, if because of the connection of new work or additional work with the plant as a whole, it prevented the completion of the contract, that would be another and an entirely different matter.] [10]

[If the new work was of such a character, if its connection with the main work was of such a nature, being so mingled with it as to prevent the completion of the plant, it would leave the parties at large, and all the plaintiff would be compelled to do would be to finish within a reasonable time. But if the additional work had nothing to do with the delay, then the mere fact that additional work was put in would not operate as a waiver of this clause.] [11]

[There has been considerable testimony submitted for your consideration as to the blowing engine, the nature of the change and the time when it was completed. The agreement for the

substitution was made on September 20. Some work seems to have been done on the foundations that fall. The final plans for the foundations were not furnished by the parties who were acting for the plaintiff in that matter to the defendant, until in February, and after that time, along about May, the foundations were finally completed. It is not complained by the plaintiff that the fact that those foundations were not completed until May delayed the putting on of the blowing engine, but it does say that the fact that the foundation for the reversing engine was not ready prevented its building the blowing engine until long after it would otherwise have had it completed. If you find as a fact, gentlemen, that the foundations for the reversing engine were delayed, if those foundations were not ready on January 1, as I have already said, it leaves the parties at large, and all that the plaintiff would be bound to do would be to go on and complete within a reasonable time. In determining what was a reasonable time, you will consider all the circumstances surrounding the transaction, and it is not improper for you to consider the agreement that the parties themselves had made, and as affected by the changed conditions produced by this state of affairs which operated as a waiver of the agreement. If the foundations for the reversing engine were completed on January 1, then of course, that is a complete answer to the contention of the plaintiff that this blowing engine was delayed because of the delay in furnishing the foundations for the reversing engine, thus preventing the getting of the reversing engine out of the shop and preventing their getting to work on the blowing engine. Of course, that makes that condition of the foundations for the reversing engine one of primary importance in view of the testimony of Mr. Wade. When were the foundations for that reversing engine finished? There is nothing said about filling in this contract, gentlemen, and if this defendant had, prior to January 1, completed the foundations for this reversing engine in accordance with the plans which had been furnished it by the plaintiff, that was all that it was required to do. The contract did not require the defendant to fill up these spaces about the foundations, but it did require it to finish the foundations, and that is the fact upon which you pass. If, however, after the foundations were finished, it did go to filling in there, and so delayed the placing of

that engine, then that would amount to a waiver of this clause entitling it to damages. If although it was not bound to fill in this cinder, it went to filling there at such a time as to delay the delivery and placing of this engine upon its foundations, that would release the plaintiff from liability under this clause, for it would have no right to interfere with the placing of the engine. The defendant was not bound under the terms of this agreement to build any extra switches or trestles, and it was not compelled to build any foundations except those that the plaintiff required for the buildings and the engines. It was bound to build the engine foundations in accordance with the plans, but it was not bound to fill in the earth around the foundations. That part of the contract which required the plaintiff to do all the work above the general level did not require the plaintiff to go down to the level of the earth. It simply required it to go down to the top of the foundations, and it did not require the defendant to build any foundations except for the buildings and for the machinery. The defendant, however, did not have the right to dump hot cinder wherever it pleased, and if it delayed the placing of this reversing engine in that way, that would be such an interference as would operate as a waiver of the clause. I do not know that any testimony has been delivered referring especially to any delay of the reversing engine because of this dumping of hot cinder. It possibly may have referred only to other matters. You will remember what the testimony was upon that point; but if the foundations for the reversing engine were there at the 1st of January, the mere fact that the cinders had not been filled in, or that the earth had not been filled in about those foundations, would not, under this contract, release the plaintiff from the operation of this clause, for, under the terms of the contract, the defendant was not bound to fill in.] [12]

Verdict and judgment for plaintiff for $76,154.48. Defendant appealed.

*Errors assigned* among others were (6, 8–12) above instructions, quoting them.

*W. B. Rodgers*, with him *J. H. Beal*, for appellant.—The burden was on the plaintiff to show why it should not pay the dam-

ages stipulated in the contract for the delay: Lilly v. Person, 168 Pa. 219; Bridge Co. v. St. Louis, 43 Fed. Rep. 769; Thornhill v. Neats, 98 Eng. Com. Law, 830; Legge v. Harlock, 12 Q. B. 1015; Texas, etc., Ry Co. v. Rust, 19 Fed. Rep. 239; Harrison v. Trickett, 57 Ill. App. 517; New York, etc., Mining Co. v. Frazer, 130 U. S. 611.

*P. C. Knox*, with him *J. H. Reed*, for appellee.—When the act of one party must necessarily precede any act of the other, a condition precedent is raised without express words: McNish v. Reynolds, 95 Pa. 483; Mill Dam Foundery v. Hovey, 21 Pick. 439; Thornhill v. Neats, 8 Com. Bench N. S. 831.

The words of an agreement are to be applied to the subject-matter about which the parties are contracting at the time: Edelman v. Yeakel, 27 Pa. 26; Allison's App., 77 Pa. 221.

Substantial performance is sufficient to entitle the contractor to recover, notwithstanding some unimportant omissions: Stewart v. McQuaide, 48 Pa. 191; Messner v. Lancaster Co., 23 Pa. 291; Snodgrass v. Gavit, 28 Pa. 221; Danville Bridge Co. v. Pomroy & Colony, 15 Pa. 159; Palmer v. Stockwell, 9 Gray, 237; Blanchard v. Blackstone, 102 Mass. 343; Focht v. Rosenbaum, 176 Pa. 14.

An obligation to complete specified work by a certain fixed time, once waived by change of plan or extras, no longer binds, and the builder is only bound to finish his undertaking within a reasonable time: Van Buskirk v. Stow, 42 Barb. 9; Green v. Haines, 1 Hilt. 254; Doyle v. Halpin, 1 J. & S. 352; Dannat v. Fuller, 120 N. Y. 554; Weeks v. Little, 89 N. Y. 566.

Hindrance by one party to a contract whereby the other party is prevented from completing his part of the contract by the time stipulated affords a legal excuse for nonperformance within such period: Stewart & Howell v. Keteltas, 36 N. Y. 388; King Iron Bridge & Mfg. Co. v. St. Louis, 43 Fed. Rep. 768.

OPINION BY MR. JUSTICE DEAN, January 3, 1898:

On June 11, 1892, the plaintiff entered into a written contract with defendant to erect a Bessemer steel plant of eight buildings, equipped with all the machinery necessary for the operation of a Bessemer steel pipe manufactory. The defendant agreed to have all building foundations ready for the super-

structures by December 1, 1892, and all other foundations by January 1, 1893. At the date of the contract defendant was operating on part of the same ground an iron pipe plant, employing about 7,000 men. In view of this, and to avoid as much as possible the interruption to their business while the new work was in progress, this clause was inserted in the contract: "It is understood that this contract is to be completed on or before June 1, 1893, and as a failure on the part of the party of the first part to complete the work embraced in this contract would, in view of the necessities of the party of the second part and the requirements of its business, involve great loss to the second party which it would be difficult to estimate, it is hereby agreed that for each day after June 1, 1893, that the work remains unfinished, the first party shall pay to the second party the sum of three hundred dollars as liquidated damages."

The work was not completed until about January 1, 1894, seven months after the date fixed in the contract, although defendant was partly in possession from October, 1893. The consideration was to be $340,000, in nearly equal instalments at sixty days' intervals, commencing September 15, 1892. The plaintiff admitted payments to the amount of $323,300.65 on the contract, but claimed the additional sum of $53,011.38, for changes and additions to the original specifications, which, with a balance unpaid on the principal contract of $16,699.35, made the entire sum claimed $69,710.73. The plaintiff averred in its statement: 1. The contract and amount of claim. 2. That the delay of plaintiff in completion of contract of June 1, 1893, was attributable solely to defendant's conduct; that it had not prepared the foundations for the structures by December 18, 1892; that at its request, during the progress of the work, costly and extensive changes were made in the original plans, and large additions thereto, and by reason thereof the time was prolonged, but that, nevertheless, the work was completed as soon as possible. The affidavit of defense averred that defendant was entitled to have set off the $300 per day for so many days as plaintiff was in default after June 1, 1893, in completion of building; denied the foundations were not ready at the times named in the contract; averred that all changes in the plans and work were voluntary on part of plaintiff, and that the delay

was caused by plaintiff's neglect in preparing the working plans. It claimed damages by reason of plaintiff's default, in the amount of $66,300.

The statement of claim and affidavit of defense made up the issue as tried in the court below. The evidence on each side was voluminous, and the contention was wholly one of fact to be settled by the jury; they found for plaintiff, $76,154.48, about the amount of plaintiff's claim with interest, and we have this appeal by defendant, with fifteen assignments of error. The complaints of appellant in the assignments are that plaintiff failed to establish by competent evidence the facts on which it sought relief from strict performance of its contract as to time of completion, and further that the court below committed error in its instructions to the jury as to the rules which should control them in computation of defendant's damages. As to the facts relied on by plaintiff to excuse it from strict performance, there was evidence tending to establish each one of them; contradicted, it is true, by evidence on part of defendant, but still leaving the contention in such situation that the court could not say the evidence was insufficient; therefore, there was no error in submitting it to the jury.

Was there error in the statement of the rule for computation of defendant's damages which may have led the jury away from the true rule, that fixed by the parties themselves in the contract? For it may be plausibly argued that if the jury once thought they were permitted to disregard the contract in this particular they would be inclined to make a new contract for the parties, and set up one allowing no damages for delay in completion, without regard to reasonableness. What was the instruction as to the liability for and measure of damages? Plaintiff averred the delay was occasioned by failure of defendant to perform its stipulations in two particulars: 1. The foundations were not completed in time. 2. It failed to fill in the ground around the foundations in time. And, further: 3. Radical changes and large additions to the original plans were made at request of defendants while the work was in progress. It is obvious if there was evidence tending to support these averments, and the jury found they were proved, then the only further question was, did the acts of defendant cause the delay in completion? Not merely cause some delay, but the whole

delay from June 1, to the date the plant was finished, handed over to and taken possession of by defendant. For the fact that plaintiff was obstructed by defendant in strict performance did not absolve it from further effort to speedily perform. When the cause for the delay—the conduct of the defendant—ceased, the obligation to speedily finish was at once reimposed with all its force on plaintiff, and failure then to perform within a reasonable time warrants defendant in invoking the $300 per day damages for every day of unreasonable delay thereafterwards. And this, as we read the charge and answers to plaintiff's written points, was the instruction of the court below; it was in exact accord with White v. Braddock Boro., 159 Pa. 201, and Lilly v. Person, 168 Pa. 219. In the first case cited, the owner's architect failed to furnish the plans and specifications in the time required by the contract, and changes were made which caused delay. It was held that the court below properly instructed the jury that if the delay in completion complained of by the owner was caused by the failure of the architect and by the changes, strict performance was excused to the extent of the delay caused by the default of the architect. The second case cited, although in different language, is to the same effect, this Court holding that if the delay complained of was the result of changes directed by the owner in the character of the building, then stipulated damages could not be recovered for the additional time necessary to complete the changed structure. In the case before us by a possible construction of some parts of the charge, it could be held to mean that an act of defendant which relieved plaintiff from strict performance as to time also relieved it from any liability for stipulated contract damages; but this is not the obvious construction, nor the fair one. Every point put by plaintiff requesting such instruction was flatly refused; more than once the jury was told that the $300 per day for delay was damages which the parties by the contract had liquidated, and if there had been unreasonable delay after June 1, 1893, then for every day of such delay there should be computed for defendant that sum, and the amount deducted from plaintiff's claim. The court did not, as argued, lay down different and inconsistent rules, but throughout, in substance charged as stated. The charge is quite elaborate, but not unnecessarily so, in view of the voluminous testimony. We do

not believe it possible that a charge such as this, occupying certainly more than an hour in its delivery, with no time for careful preparation, could be so framed as to be exempt from criticism. With the time on part of counsel for careful examination of the typewritten charge, trifling defects are disclosed, such as the use of inapt words, or words so placed in the sentence as to be capable of other signification than that intended; but the question on review is not, is the language possibly capable of conveying a wrong meaning, but does the charge, as a whole, correctly and fully bring to the minds of the jury the true point in controversy and direct their attention to the evidence bearing upon it? If this be so, it is altogether improbable that they were misled by trifling inaccuracies of language or a single inadvertent misstatement of the evidence. When it requires on part of counsel a miscroscopic inspection of a charge to detect a flaw, we will not assume that it was manifest to the jury, and that they were controlled by it; and to work a reversal the error must appear much plainer to us than does the one complained of here. What we have said applies to all the assignments of error worthy of any notice.

All are overruled and the judgment is affirmed.