# CHARLESTON.

## WAID v. DIXON.

Submitted February 17, 1904—Decided March 1, 1904.

1. DECLARATION—*When demurrable.*
    A declaration purporting to be a declaration in trespass on

the case in *assumpsit* which fails to aver any promise of payment on the part of the defendant is demurrable.  (p. 196).

2.    ASSUMPSIT—*Gist of Action.*

In *assumpsit* the gist of the action is the promise of payment on the part of the defendant., which must be clearly averred.  (p. 196).

3.    ASSUMPSIT—*Promise of Payment.*

Such promise of payment may be either express or implied by law. Whether express or implied, the averment thereof may be in the same form or language.  (p. 196).

Error to Circuit Court, Greenbrier County.

Action by William S. Waid against John T. Dixon.    Judgment for plaintiff, and defendant brings error.

*Reversed.*

H. L. VAN SICKLER and WILLIAMS & DICE, for plaintiff in error.

J. W. ARBUCKLE and PRESTON & WALLACE, for defendant in error.

DENT, JUDGE:

John T. Dixon, defendant, complains of a judgment of the circuit court of Greenbrier County in favor of William S. Waid for the sum of $362.50, rendereed the 4th day of May, 1903.

The first error relied on is the overruling of the demurrer to the declaration and each count or allegation thereof.

The declaration is as follows to-wit:

"The State of West Virginia.   In the circuit court of Greenbrier county, to-wit:   Wm. S. Waid complains of John T. Dixon, defendant, of a plea of trespass on the case, for this, to-wit, that whereas, on the ——— day of January, 1899, the defendant, John T. Dixon, then and still a resident of the said county and state, was the owner of large tracts of timbered lands lying in the counties of Buchanan and Russell, in the State of Virginia, and also the owner of a valuable steam engine, saw mill and fixtures complete and ready for sawing and manufacturing logs into lumber; that on the 19th day of January, 1899, aforesaid, the said defendant induced said *plaintiff to agree* to go upon said tract of land and saw and manufacture

all the logs put to said saw mill into lumber, and entered into *contract* with plaintiff by which defendant leased or hired his said saw mill and fixtures, engine, &c., to said plaintiff for twelve months at the price of eleven hundred dollars, and on the same day the said defendant, John T. Dixon, through his agent, and in the name of his agent, John C. Hunter, entered into a contract with this plaintiff whereby plaintiff agreed to saw and stack all the oak and poplar timber bought of Albert Pack, trustee, and others, and located on Gresson Creek in Buckanan county, Virginia, for said defendant, John T. Dixon, at the price of $3.50 per M. for common and better oak, $2.75 for common and better poplar and $1.38 for poplar culls to be *paid by the defendant to the plaintiff each* month on the 20th of the month following that on which the lumber was sawed, that said contracts were made and entered into at Ronceverte in the county of Greenbrier aforesaid. That under the contract aforesaid with said defendant, the said steam engine, saw mill and fixtures were to become the property of plaintiff at the expiration of the said twelve months. That said plaintiff in pursuance of said contract at great cost and expense to him, went at once and took possession and control of said engine, saw mill and fixtures, and set the same as directed by the defendant on defendant's land at Grisson creek, in the county of Buchanan as aforesaid and sawed at the least five hundred thousand feet of lumber of the classes and grades set forth in said contract and as ordered and directed by defendant. That in May, 1899, plaintiff in pursuance of the order and direction of defendant moved his said engine, saw mill and fixtures to a second set on said land on Grisson's creek, and at said second set sawed for defendant at the least six hundred thousand feet of lumber of the classes and grades set forth in said contract and as directed by the defendant and at his request. That about the first of September, 1899, and while plaintiff was sawing at said second set with hands employed, said defendant ordered the sawing to stop, and the mill to be closed for two months without the consent and over his protest and to his injury, loss and damage. That in November, 1899, the defendant ordered the engine, saw mill and fixtures to be moved and set up at Bartontown or near there. That plaintiff at heavy costs moved the said engine, saw mill and fixtures in pursuance of said direc-

tions, and at the request of said defendant, and set the same up at the place near said Bartontown, where he operated until April, 1900, sawing at this set at lest five hundred thousand feet of lumber of the classes and grades set forth in said contract and as directed and requested by said defendant. That in April, 1900, at the request and directions of said defendant, plaintiff again moved said engine, saw mill and fixtures, at great cost and expense to Hart creek, in Russell county, Virginia, and then again set up the same at defendant's land, and operated until July, 1900, and this set sawed at the least two hundred and fifty thousand feet of lumber of the classes and grades named in said contract, and as directed and requested to do by said defendant. That at all of said sets, and at each one of them, plaintiff sawed the lumber and trimmed the same in a workmanlike manner, and as required by his contract, and in every way complied with his contract, but the defendant did not in any instance comply with his part of the contract. Plaintiff further avers: That about the last of July, 1900, said defendant stopped logging the mill and ordered said sawing to stop and said saw mill to be closed down, at a time when plaintiff had men employed and at work, without plaintiff's consent or agreement, and refused to allow plaintiff to complete the job at that set, estimated at one million feet of lumber, to the great injury, loss and damage to plaintiff. Plaintiff further avers that at the expiration of the twelve months set out in the said contract, to-wit: on the 19th day of January, 1900, he by and with the consent of said defendant took complete possession and control of said steam engine, saw mill and fixtures and absolute ownership of the same. That when said defendant ordered the work to stop and the mill closed in July, 1900, he represented to plaintiff that the work would only be stopped about two months, and then resumed, that defendant would see and undertook that the steam engine, saw mill and all the machinery and fixtures attached and belonging thereto would be properly and safely taken care of and kept in good condition and ready for work when the work began at the expiration of said two months. That at the expiration of said time, plaintiff was ready to resume the work of sawing, but defendant refused to permit plaintiff to resume work, and refused to do anything to carry out his part of the

contract. Plaintiff further avers that the defendant failed, neglected, and refused to furnish plaintiff means to carry on his work of sawing under the contract as defendant was bound and agreed to do; and in consequence of said neglect, failure and refusal of said defendant to furnish plaintiff with such means, plaintiff in order to carry on the work for defendant, was compelled to seek credit to meet his expenses, and to mortgage the said steam engine, saw mill, machinery and fixtures by giving deed of trust thereon, and that said steam engine and saw mill was sold away from plaintiff to meet the debts so incurred at the price of $300. That said defendant instead of seeing that said steam engine, saw mill, machinery and fixtures was well cared for and protected and kept safe and in good condition as he agreed to do he permitted as plaintiff is informed John Hunter and David Gambell to use and occupy the mill and saw with, and permitted said engine, saw mill, machinery and fixtures to stand out in the weather unprotected, so that, the belting and many valuable parts of the mill and machinery were carried away, stolen and destroyed, to such an extent that the whole that was left thereof was sold at said sum of $300, and all this entailed heavy loss, injury and damage to plaintiff, to-wit, $3,000. Plaintiff avers that he kept and performed his contract in every particular and was always ready and willing to fulfill his part of the contract in every particular. That the lumber he sawed was taken by defendant and placed upon the market, or taken into the possession of said defendant. That said defendant kept monthly estimates of the lumber, and although plaintiff sawed nearly two millions of feet of lumber for defendant, defendant has *not settled* for the same or accounted to plaintiff, although often requested to do so.

Yet the said defendant so being informed of the amount and value of the lumber sawed by plaintiff, and of his obligations under said contract to plaintiff, and utterly disregarding the rights of plaintiff in neglecting, refusing and failing to furnish plaintiff means to carry on his work under said contract, and in refusing to permit plaintiff to finish the job of sawing at Hart's creek, and ordering the work to stop and the mill to be closed, and refusing and failing to allow plaintiff to resume that work and complete the job of sawing; and in neglect-

ing, failing and refusing, to look after and take care of said engine, saw mill, machinery and fixtures as he agreed to do, and permitting the same to be used and the belting and other parts of the machinery and fixtures to be carried away, stolen and destroyed; and in refusing to account to plaintiff and pay for the lumber sawed for him by the plaintiff; and in neglecting, refusing and failing to carry out his contract and furnish plaintiff means to keep up his work, and thereby forcing plaintiff to suffer his valuable machinery to be taken from him and sold; and in depriving plaintiff of the labor and profits he was justly entitled to posess and enjoy by sawing the timber left unsawed at Hart's creek when defendant ordered the work stopped, but wholly neglected so to do. And by reason of all this bad case, negligence and default of said defendant, in complying with his contract and obligations to plaintiff, as hereinbefore set forth, although often requested so to do, said plaintiff has been greatly wronged, and caused to pay out money, and suffer great injury, loss and damage to the said plaintiff three thousand dollars. And therefore he sues. John W. Arbuckle, p. q."

From an inspection of this declaration, it is impossible to say whether the draughtsman thereof intended it to be a declaration for trespass on the case or trespass on the case in *assumpsit*. In form it is a commingling of the two actions, while the substance thereof and the account filed therewith are proper only in an action of *assumpsit*. The difference between the two actions is that case is for damage occasioned by wrongful action or negligence, while *assumpsit* is damages for failure to perform or breaches of promises express or implied by law. In the latter the promise is the gist of the action, and where there is no promise alleged on the part of the defendant the declaration is fatally defective, for it presents no averment on which the defendant can take issue by the plea of *non-assumpsit*. 2 Tuck. Com., 143; *Wolf* v. *Spence,* 39 W. Va. 491, 494; 4 Minor's Institutes, pt. 1, p. 557; 2 Chit. Pl. 279; 1 Rob. Forms 527; *Sexton* v. *Holmes,* 3 Munf. 566; *Winston's Ex'ors.* v. *Francisco,* 2 Wash. 189; Hogg's Pleading and Forms, p. 72, sec. 84. It would have been a very easy matter for the plaintiff to have made this declaration good in *assumpsit* by having added after the matter of inducement and consideration "that by reason whereof, the de-

fenedant became indebted to and liable to the plaintiff in the sum of $————, and being so indebted he in consideration thereof undertook and faithfully promised to pay the same to the plaintiff on request, yet the defendant, though often requested, hath not paid the same, but refuses, to the damage of the plaintiff $————, and therefore he sues," or words to the same effect averring a promise on the part of the defendant. It does not make any difference whether the defendant ever made any such promise, nor is it necessary to prove it. All that is necessary to prove is a liability under the allegations of the declaration and the law implies the promise if it is properly alleged. Nor is such promise rendered unnecessary by section 29, chapter 125, Code, for such section was not intended to do away with the common law forms of pleading or destroy the essential characteristics of the different kinds of actions, as these are highly necessary to promote the ends of justice. The declaration being bad because of the want of the necessary allegation of promise on the part of the defendant, the demurrer thereto should have been sustained, and plaintiff should have been required to amend his declaration so that a proper issue thereon could have been joined. There is no mis-joinder of action for the plaintiff has the right to recover in an action of *assumpsit* for the various matters averred in the declaration when he properly amends the same to conform to an action of trespass on the case in *assumpsit* or on promises. This seems a technical matter on which to reverse the case, but according to long established principles of law calculated to promote justice, and a fair trial between litigants and precedent firmly established, the Court cannot do otherwise.

The judgment is reversed, the verdict of the jury set aside, and the case is remanded to the circuit court with leave to the plaintiff to amend his declaration.

*Reversed.*