# WHEELING

## WHEELING MOLD AND FOUNDRY CO. *v.* WHEELING STEEL AND IRON CO.

Submitted January 11, 1907.    Decided June 14, 1907.

1. SALES—*Action for Breach of Contract—Declaration—Sufficiency.*

   An averment in a declaration, by way of excuse for non-performance within the time specified of the plaintiff's contract to manufacture and deliver machinery, that the plans therefor agreed to be furnished by the defendant were not furnished until long after the time provided for delivery of the machinery, sufficiently charges a breach of the implied duty of the defendant to furnish such plans a reasonable time before that date.   (p. 292.)

2. ASSUMPSIT, ACTION OF—*Declaration—Allegation of Promise.*

   In an action of *assumpsit*, the gist of the action being the promise of payment, the express promise should be laid in the declaration; the mere recital of the writing sued on, though a true copy, is not sufficient; and there is no distinction in pleading in this regard between an express and an implied promise.   (p. 292.)

3. SAME.

   *Quaere:*   Does this rule of pleading apply in averring a dependent promise and a breach thereof, by way of excuse for failure of the plaintiff to perform his contract within the specified time?   (p. 292.)

4. PLEADING—*Declaration—Immaterial Matter—Effect.*

   Immaterial matter alleged in a declaration will be treated as surplusage and as not vitiating the declaration.   (p. 293.)

5. SALES—*Delay in Delivery—Effect.*

In a suit to recover the balance of the price of machinery, under a contract which provides that if said machinery be delivered complete at the point of delivery previous to the day specified therefor the owner should pay the contractor in addition to the sum stipulated $50 for each day it was delivered prior thereto, and that if the machinery be not completed and delivered until after the day specified the contractor should receive the sum stipulated less $50 for each day it should require to complete and deliver the same, the plaintiff cannot recover, unless legally excused for delay, any sum greater than provided by the contract. (p. 293.)

6. SAME—*Action for Breach of Contract—Burden of Proof.*

In a suit upon such contract, if the plaintiff would excuse the delay on account of omission of some act or the defendant, the duty devolves upon him to measure by competent proof such delay in periods of days, not leaving it to be guessed at by the jury from some indefinite and uncertain evidence. (p. 294.)

7. SAME—*Modification—Effect.*

Under such a contract, if the plaintiff relies upon some modification thereof as cause for delay, whenever the causes of delay set in operation by defendant are removed the contract in all its force continues binding upon the plaintiff, unless under the new arrangement additional time is stipulated or the character of the modification or the conduct of the defendant is such as to necessarily delay performance of the original contract. (p. 294.)

8. WRIT OF ERROR—*Review—Presumption as to Effect of Error.*

Unless it clearly appears that the objecting party has not been prejudiced by the admission of illegal evidence, the verdict of the jury should be set aside. (p. 296.)

9. PLEADING—*Motion to Strike Out Declaration.*

A motion to strike out the declaration on the ground of want of evidence to support it is not proper practice, other approved methods of practice being better applicable to such cases. (p. 302.)

10. NEW TRIAL—*Verdict Not Conforming to Evidence.*

In an action on a contract the parties are entitled to have it executed according to its terms, not according to some notion of equity or justice, or upon some fancied theory of computation by court or jury. (p. 302.)

Error to Circuit Court, Ohio County.

Action by the Wheeling Mold & Foundry Company against the Wheeling Steel & Iron Company. Judgment for plaintiff, and defendant brings error.

*Reversed, and new trial granted.*

HUBBARD & HUBBARD, for plaintiff in error.

HENRY M. RUSSELL, for defendant in error.

MILLER, JUDGE:

The verdict and judgment on the new trial awarded by this Court (58 W. Va. 62) were, as on the first, for the identical sum sued for—$12,298.93. On the former hearing, the judgment of the circuit court overruling the demurrer to the amended declaration and each count thereof was not challenged, but is now assigned as error. On the last trial, on motion of the defendant to strike out the several counts, the court struck out the first but overruled the motion as to the others. The argument of counsel relate to the second and third counts, and we need notice them only. The former opinion recites the substantial provisions of the contract declared on, and they need not be here repeated.

The second count avers that, after the contract was made and the drawings furnished, the plaintiff proceeded with due diligence to do the work, which it is averred was of such a character and magnitude as to require in its completion for a long period the entire time and capacity of plaintiff's manufacturing establishment; that shortly after making the contract the defendant procured the plaintiff to agree that the drawings furnished should be modified, and the work done in accordance with other drawings thereafter to be furnished by the defendant; that, pursuant to said last arrangement, the original drawings were surrendered, after which the defendant furnished the plaintiff a small number of the substituted drawings; that the plaintiff proceeded to do the work and manufacture the machinery so far as it could with the new drawings received, the starting of the work according thereto involving considerable change in all succeeding work and in all portions of the articles thereafter to be manufactured, so that it was impracticable to proceed further until the residue of the new drawings should also be furnished, which, by way of assigning breach of contract, it is further averred the defendant failed to furnish until long after January 14, 1902, by reason whereof the plaintiff was prevented from completing the work within the time provided, and which but for such delay of the defendant it alleges it would have done. It is further averred that as soon as practicable

after the said new drawings were subsequently furnished (the time when not alleged) the plaintiff proceeded with the utmost diligence to manufacture the machinery, but was unable to complete the same until. September 24, 1902; that on the day last named it had fully performed all the work and manufactured all the machinery, which was on the same day delivered to and accepted by the defendant; that the delay therein was not due in any respect to any fault or dereliction of the plaintiff, but wholly to the fault of the defendant in the failure to perform those things which under the said agreement and the subsequently made arrangement it was to perform; that by reason of the premises the defendant became and was liable to pay the plaintiff thirty days after the said 24th day of September, 1902, when there was a complete erection and acceptance of the whole machinery, the said sum of $58,526, which, though often requested, the defendant has failed and neglected to do, etc.

The third count is substantially the same as the second, except it avers more specifically the duty of the defendant under the contract to provide foundations and motors, and introduces as additional excuse for delay the failure of the defendant to provide these foundations and motors. As a breach of its duty to provide motors, the plaintiff alleges that the defendant did not, though often requested by plaintiff, furnish and deliver them; either at its place of business, the place of erection or elsewhere, until long after the time when according to the said contract it should have delivered the same, and until long after January 14, 1902, by reason whereof the plaintiff alleges it was further delayed in the manufacture of said machinery and completion of the work; but that subsequently, when after long and unreasonable delay the defendant did deliver said motors, it.promptly upon receipt thereof (date and place not averred), as soon as practicable and with the utmost diligence, proceeded to do the work and manufacture the machinery. It is also averred that the improper construction of said foundations necessitated their reconstruction; that the plaintiff could not finish the work until the foundations had been reconstructed; and that the improper construction and consequent reconstruction of the foundations was the cause of further delay in the completion of the work and the manufacture of the machinery by the plaintiff.

As to the second count the grounds of objection are, first, that it avers no breach of duty to furnish the original drawings, but on the contrary alleges they were furnished, and hence no breach of duty or contract is charged thereby; second, that there is no allegation that under the new arrangement the substituted drawings were to have been furnished, otherwise than that they were to have been furnished "thereafter." It is claimed that, as a question of pleading, it cannot be assumed that the drawings were to have been furnished within a reasonable time or before January 14th, and hence that there is no sufficient averment of any duty or promise nor of a breach thereof. The contract, as pleaded, undoubtedly implies a promise of the defendant to provide the original and modified drawings within a reasonable time. The count does allege that these drawings were not furnished until long after the time fixed for delivery of the machinery—a sufficient averment we think of the breach of the implied duty to furnish the plans a reasonable time before that date. But it is insisted that it was necessary for the pleader to have specifically averred, what is implied, that the defendant was to furnish the plans before January 14th, or within such a reasonable time before January 14th as to enable the plaintiff to perform its contract. It is unquestionably true in an action of *assumpsit* on a promise to pay money that, the gist of the action being the promise of payment, an express promise ought to be laid in the declaration; and that a mere recital of the writing, though a true copy, is not sufficient. *Wade* v. *Dixon*, 55 W. Va. 191; *Wooddy* v. *Flournoy*, 6 Munf. 506; *Sexton* v. *Holmes*, 3 Munf. 566; *Cook* v. *Simms*, 2 Call. 39, 315; *Winston* v. *Francisco*, 2 Wash. 240; 1 Chitty Pl. 274. There is no distinction in pleading between an implied promise and an express one. 1 Chitty Pl. 309, citing *Kinsley* v. *Bill*, 9 Mass. 199; *Candler* v. *Rossiter*, 10 Wend. 487; and *Payne* v. *Grant*, 81 Va. 164. And a general averment that the defendant did not perform his agreement, which might involve a question of law, is not sufficient. 1 Chitty Pl. 332. Does this rule apply, however, in averring a dependent promise, and a breach thereof by way of excuse for the plaintiff's failure to perform its agreement within the specified time? Whether it does or not, we think the count sufficiently avers a promise

to furnish the new plans within a reasonable time implied and that the breach charged is coextensive with the legal import of the contract, to allege which is always regarded as sufficient.   *Carroll* v. *Collier*, 22 Grat. 302, 307.   But it is said this count, if not defective for any other reason, is bad for failure to allege that the plaintiff discharged the whole duty incumbent on it.   We are of the opinion that, as the averments as to what was required of it and what it did under the contract are of themselves sufficient averments that the plaintiff discharged its whole duty, this count is not amenable to such criticism.

The grounds of objection to the third count are, first, that it is subject to the same objection as the second; second, that the plaintiff's right to payment did not depend on putting the machinery on the foundations; third, that there is no averment that the motors were to be delivered before January 14th or even within a reasonable time, nor of any notice to the defendant as to which of the places mentioned in the contract the plaintiff desired them delivered.   As to the first ground, and the third so far as it relates to delivery of the motors, we make the same answer as we made to the demurrer to the second count.   With respect to the second ground, we do not think it available, as all matter alleged respecting foundations should be treated as surplusage, not vitiating the declaration.   Hogg's Pl. and Forms 59, citing 5 Am. & Eng. Ency. Law, 352; *Id.* 213, citing 1 Chitty Pl. 547; *Searles* v. *Railroad Co.*, 32 W. Va. 370.

The next grounds of error relate to the ruling of the court on the admission and rejection of evidence.   A clear conception of the real issues will aid in their disposition.   The plaintiff failed to perform its contract, and did not complete the manufacture and delivery of the machinery until September 24, 1902.   Unless legally excused for delay, it is not entitled to recover anything in this action.   By its pleadings it has assumed the burden, imposed by law, of showing by competent evidence that some or all the delay was due to conduct of the defendant.   The question of foundations being eliminated, the plaintiff bases its claim upon the alleged failure of the defendant to furnish the drawings and to deliver the motors.   The burden of proof devolving upon the plaintiff could not be discharged by a mere showing that such

failure of the defendant caused some delay. It was the duty of the plaintiff to measure by competent proof the delay in periods of days, not leaving it to be guessed at by the jury from some indefinite and uncertain evidence; for under the contract every day of delay is chargeable to the plaintiff except that due to conduct of the defendant. The plaintiff relying upon the contract as modified, whenever the causes of delay set in operation by the defendant were removed the contract in all its force continued binding upon the plaintiff, unless under the new arrangement additional time was stipulated or the character of the modification or the conduct of defendant was such as to necessarily delay the original contract. *Engineering Co.* v. *Tube Works*, 184 Pa. 251; *Mc-Gowan* v. *Tan Bark Co.*, 121 U. S. 575, 601; *Rowland Land Co.* v. *Ross* (Va.), 40 S. E. 922; *Dannat* v. *Fuller*, 120 N.Y. 554; *Interocean Transportation Co.* v. *Sheriffs*, 54 Wis. 202; *Standard Gas Light Co.* v. *Woods*, 61 Fed. Rep. 74, 76.

In view of the future bearing on the case which our conclusions may have, it is proper that we discuss all the various rulings on evidence relied upon in the argument of counsel. After the witness Blue, president of the plaintiff, had said that his company necessarily had to complete the work after January 14th, he testified that thereafter they worked on it whenever they had material and the shop superintendent had instructions to give it preference in every way. The question was not what instructions had been given by the plaintiff to its superintendent, but what actual work had been done by it. We do not see, however, how the defendant was prejudiced thereby. The jury could easily have discriminated between instructions to do and what was actually done. We must give the court and jury credit for intelligence and fidelity in the discharge of their respective functions.

This witness further said: "We had contracts for other work previous to this and at the time we were working on it, *but we did not contract for any deliveries that would interfere with the delivery of this.*" The court overruled the motion to strike out the words underscored. Such opinion evidence, as held by this Court on the former hearing, is improper. True, upon cross-examination this witness stated that the contracts for the other work did cause delay; but we cannot say what effect such illegal evidence had upon the

mind of the jury; and the rule is that, unless it clearly appears that the objecting party was not prejudiced by the illegal evidence, the verdict should be set aside. *Dent* v. *Pickens*, 34 W. Va. 240. If it may have prejudiced the exceptor, though it be doubtful whether it did or not, it will be cause for reversal of the judgment. *Poindexter* v. *Davis*, 6 Grat. 481; *Insurance Co.* v. *Trear*, 29 Grat. 259; *State* v. *Kinney*, 26 W. Va. 141; *Taylor* v. *Railroad Co.*, 33 W. Va. 39; *Webb* v. *Big Kanawha Co.*, 43 W. Va. 800.

The plaintiff's witnesses Larsen and Yertzell were permitted, and the defendant's witnesses Hunter and Kennedy required, to testify that the foundations were not ready when the machinery was delivered. While the court below admitted this testimony, it instructed the jury that the condition of or work on the foundations could not in any way affect the duty of the plaintiff under the contract with respect to the time for the manufacture and delivery of the machinery. If the issue had been whether or not the defendant was damaged by the plaintiff's failure to deliver the machines at the time specified, the evidence would have been proper; but its admission in connection with the immaterial issue presented by the pleadings we think was calculated to mislead the jury, and that the defendant may have been prejudiced thereby.

Exceptions were taken to testimony respecting the importance of the machines the drawings for which were changed, and the proportion of the plans that were changed; the objection being that the important question was the nature, extent and consequences of the changes, not the size of the machines, and that the proportion of and the delay occasioned by the changes were the only relevant questions; the court giving as its reason for admitting this evidence that the importance of the changes might be thus developed. Of course the importance of the changes in the plans, not the size or importance of the machines, would best develop the causes and the extent of the delay; but the size and importance of the machines might also contribute to the delay, for it might take longer to make the pattern or change the pattern for a larger than for a smaller machine. The interests of the defendant in this respect seem to have been fully protected by the cross-examination which followed and by the instructions to the jury.

The witness Yertzell, foreman of plaintiff's shop, without producing the orders showing when the work came into the shop and without stating the exact date when the work was actually begun after receiving the orders, testified that they started on the work very soon after he got the orders, and that as soon as he got everything to work on and the material came he took the first opportunity to finish and do what he could do. As the dates of the orders and the time when the work was begun thereafter were the material points called for, it was error to permit the witness to approximate dates when the better evidence of exact dates was at his command.

The witness Blue, when asked what effect the changes in plans had on the progress of the work, answered in effect that they could not start on the patterns for the particular machines until the changes were made, that they could not order material for or do a stroke of work on any of the machines until the drawings were all changed, and that such changes continued until probably December 4th. As the motion to strike out went to the entire answer, it was properly overruled. Some of the statements are patent facts; for instance, that the plaintiff could not start on the patterns for particular machines until the changes in the drawings for them were made. That some of the other statements may have been recklessly made, and the witness shortly afterward compelled to admit their incorrectness, did not make the answer objectionable in the first instance. The jury would easily recognize the conflicting statements of the witness.

Plaintiff's counsel asked the witness Blue whether, in view of these changes, it was possible or practicable to have finished the work by the 14th of January, and he was permitted to answer that it was absolutely impossible. This was a conclusion or opinion of the witness from his previous evidence, which it was the province of the jury, not the witness, to draw.

The witness Yertzell was allowed to testify that Bankard, superintendant of defendant, had said to him that he had looked the matter up and Westinghouse could not deliver the motors any faster than he did. It is objected that Bankard was not the agent of the defendant to make this admission. Bankard himself denied this statement. The evidence is

wholly immaterial. The question was when the motors were delivered, not whether the manufacturer could deliver them faster. While the evidence should not have been received, its reception was not reversible error, because not prejudicial.

Errors are assigned in the giving and refusing of instructions. We are asked to reconsider plaintiff's instructions 1 and 2, which are identical with instructions approved on the former hearing. It is said that formerly this Court gave no reason for its ruling; and that, although the facts were not substantially different on the second trial, they were brought out more clearly and freed from some of the controversy and dispute. The first instruction told the jury that, if they found from the evidence the modifications of plans necessi_ tated longer time for completion of the work, the plaintiff was not chargeable with $50 for each day of such additional time. It is argued that the plaintiff would be liable, unless additional time was stipulated for; that the effect of the instruction was to tell the jury that, although there was no evidence of change by the parties in terms of payment or time of delivery, nevertheless the change of plans effected as a matter of law a change of time for delivery. We emphasize the words of the instruction, "necessitated the taking of a longer time," as rendering it proper, although these words should probably have been enlarged to make the instruction a little more definite in its meaning. In *Engineering Co.* v. *Tube Works, supra*, the court approved a similar instruction, but, instead of the language employed in this instruction, the following was used: "Unless the jury are satisfied from the evidence that the defendant knew or ought to have known that that would necessarily require more time to do, and so prevent the completion of the contract within time," and "unless the change was of such a nature that the parties would be presumed from that very fact to know that it would render the completion within time not reasonably probable."

Instruction number 2 was that, if they found all or any of the delay due altogether to acts or defaults of the defendant, the plaintiff was not chargeable with the delay so caused; and that, if the plaintiff be found entitled to credit for an unpaid portion of the contract price, they should not charge

against it or deduct from the contract price any amount by reason of any such delay due to conduct of the defendant. The instruction, properly interpreted, we think would mean that the plaintiff was not to have any credit for delay unless the whole or some part thereof was due altogether to the acts or omissions of the defendant, that if any part of the delay with respect to the furnishing of plans or delivery of motors was due to the acts or omissions of the plaintiff it could not get credit for the delay; and, thus interpreted, we think the instruction favorable to the defendant. It may be somewhat amenable to criticism because of the words "the whole or any part of the delay," unless we limit these words (as we think the instruction properly does in its conclusion) to the whole or any part of the delay due to the particular acts or omissions of the defendant mentioned in the instruction considered separately; for, unless so interpreted, the instruction would be inapplicable to the evidence in the case, there being no evidence to show that all of the delay from the date provided for the completion and delivery of the machinery and the date when it was actually delivered was due to the acts or omissions of the defendant.

The rejection of the defendant's instructions numbered 13 to 20 inclusive is complained of, numbers 1 to 12 inclusive having been given by the court. Number 13 told the jury that "upon the evidence in this case there is no doubt that the plaintiff is responsible for the delay between January 14 and February 14, 1902, and for the delay between July 1 and September 24, 1902, and the only question for the jury under the evidence and instructions of the court is whether the defendant is responsible for any of the delay between February 14 and July 1, and if so for how much thereof." The vice of this instruction is that it in effect told the jury there was no evidence of any delay caused by the acts or omissions of the defendant prior to February 14th, when the fact is that the defendant's own engineer stated that the change in plans would necessarily cause some delay. This instruction in part is based upon the assumption that the witnesses for the plaintiff testified (as they did) that the contract involved more labor than was supposed, and that if nothing had interfered the plaintiff could not have completed the work before February 14, 1902. Some of the wit-

nesses indicated that even a much longer time would have been required. But, while under this evidence the defendant could not be charged with the additional time required by lack of capacity of the plaintiff, it was not proper to place this credit immediately after January 14th.

Instructions 14 and 15 relate to changes in the plans for overhead pusher, charging trough and second run trough, mentioned in certain correspondence between Kennedy and the plaintiff. The first told the jury that the defendant was not liable for any delay caused by those changes; the second, that it was not so liable if the jury believed from the evidence the plaintiff undertook to build the machinery in accordance with the terms of the original contract, including those relating to price and time for completion. The basis for both instructions seems to be that said correspondence made mention of no additional time. Both are amenable to the objection that they eliminate from the consideration of the jury the implied agreement that when the charges were made they would necessarily require more time than that stipulated.

Instruction 16 was that "the condition or progress from time to time of the foundations intended to receive the machinery to be manufactured by the plaintiff under the contract cannot in any way affect the duty or liability of the plaintiff under that contract with respect to the time for the completion thereof." This instruction is the same as number 12 given by the court, except that in the latter, instead of the last three words of number 16, the words "manufacture and delivery of the machinery" are used. Counsel say this difference in verbiage was intended to defeat any possible effort to distinguish between the time for manufacture and delivery and the time for completion of the machinery. Grammatically construed, however, "completion" in number 16 refers to "contract," not "machinery." We think the language of number 16 was misleading in this respect, and without modification should not have been given. Besides, if modified according to the construction of counsel, it would mean the same thing as number 12.

Instructions 17 and 18 were by this Court adjudged bad on the former hearing, and we see no reason to depart from the views then expressed; besides, the question as to this

case is now adjudicated. To the reasons formerly given, we may add that it was as much the duty of the defendant to furnish the motors within a reasonable time as it was of the plaintiff to execute its part of the contract within the time prescribed. The engineer Kennedy, defendant's representative, so construed the contract, as we interpret his letter to the plaintiff of December 13, 1901, notifying the plaintiff that the motors had been contracted and requesting shipping orders. These instructions were calculated to withdraw from the jury any consideration of the obligation of the defendant with respect to the motors, and were properly rejected.

Number 19 is a sort of summary instruction in which is assembled most of the points covered by the instructions given at the instance of the defendant, particlarly numbers 5 to 12 inclusive. It is conceded that on the theory of the instruction the sum of $46,126 inserted as the contract price as of September 24, 1902, was incorrect, the correct amount being $45,926—an error of $200 which the defendant claims did not vitiate the instruction; but may the error not have misled the jury? It is insisted that previous instructions given did not excuse the defendant (as this one was intended to do) for any delay which might have resulted from the insufficiency, improper arrangement or mismanagement of the plaintiff's plant, or from the plaintiff's mistakes in estimates or otherwise, or for any delay growing out of defendant's change in plans if the plaintiff agreed to make the changed machinery in accordance with the original contract. The criticism of the plaintiff is that in reaching either of the amounts $46,126 or $45,926 the defendant undertakes to have the court deduct from the contract price $50 for every day from January 14th until September 24th. The first proposition of the instruction is that "the price to be paid by the defendant to the plaintiff under the contract for the work which was completed on September 24, 1902, is $46,126." This proposition is not exactly accurate; it depended upon whether the delay was due to acts or omissions of the plaintiff. The broad statement was calculated to sweep from the consideration of the jury any delay due to acts or omissions of the defendant. It is true that the language of the instruction quoted was followed by the declaration that, inasmuch as

more than the sum named had been paid to the plaintiff be-
fore suit brought, the jury should find for the defendant
unless the delay was due to some act or default of the de-
fendant, in which latter case they should find for the
plaintiff, but only an amount equal to $50 for every day of
delay so caused by the defendant.    But we do not think this
qualification relieved the instruction from the objection to
the broad declaration in its opening sentence.    Perhaps the
most objectionable part of this instruction is the last clause,
which is intended to excuse the defendant for any delay on
account of changed plans provided the plaintiff agreed to
make the machinery according to such changed plans in ac-
cordance with the original contract; this would have with-
drawn from the jury the element of implied contract for a
longer time hereinbefore considered.

Number 20 was a binding instruction to the jury to find for
the defendant.    We think it was properly refused, as there
was certainly enough evidence in the case to go to the jury
and upon which they could have found a verdict for some
amount in favor of the plaintiff.

The next error assigned is the action of the court in re-
fusing to strike out the second, third and fourth counts of
the declaration, the motion having prevailed as to the first.
As the common counts are concededly good in form, and as
we have held the second and third counts good upon de-
murrer except as to the surplus matter in the third relating
to foundations, we are of opinion that the motion to strike
out these counts was properly overruled except as to such
surplus matter.    The motion with respect to the third count
was separately applied to the averments respecting changes
in plans, the averments respecting motors and the averments
respecting changes in foundations.    We are of opinion that
the motion was properly overruled with respect to this
count except as to the averment respecting foundations; that
was immaterial matter, and the court should have stricken it
out.    The other ground of the motion was that there was no
evidence to support these counts.    We have never understood
it was proper practice to strike out declarations or counts
thereof, good upon demurrer, because of want of evidence
to support them.

The remaining error assigned is the ruling of the court

on the motion to set aside the verdict of the jury. The
grounds were that it was without evidence to support
it, and was against the weight of the evidence. Inasmuch
as the verdict was for the identical sum sued for, it is evi-
dent the jury concluded that all the delay was chargeable
to the defendant. Such a conclusion in our opinion is
wholly unwarranted by the evidence. It is argued that,
as no interest was added to the sum sued for, the jury must
have considered the accrued interest equal to the sum with
which the plaintiff was properly chargeable. If one
month's delay was due to incapacity of the plaintiff's plant
and all delay from July 1st to September 24th chargeable
to the plaintiff, as the evidence strongly indicates, and no
part of the delay prior to January 14th chargeable to the
plaintiff, which is not supported by the evidence, at least
114 days of delay would be chargeable entirely to the
plaintiff, which at $50 per day aggregates $5,700. The in-
terest on the sum sued for from October 24, 1902, to De-
cember 20, 1905, the date of the verdict, is little in excess
of $2,500; if the price of the delay chargeable to the plain-
tiff be deducted from the principal as of October 24, 1902,
as would be proper, the interest on the balance would be
much less. Upon no principle applicable to the case are
we able to account for the verdict of the jury. The par-
ties are entitled to have the case tried and determined
according to the contract, not upon some fancied theories of
computation by court or jury. The claim of the plaintiff
is that the delay was due to the failure of the defendant to
furnish plans, provide the motors and build foundations,
the latter of which grounds we have seen is not pertinent.
Special counts two and three charge that after furnishing a
small number of the new drawings the defendants did not
furnish the remaining number until long after January 14,
1902. The evidence is that all of the amended drawings were
delivered on or prior to November 21, 1901. Besides, the
evidence of plaintiff's witnesses show that considerable delay
was due to failure of the plaintiff to obtain materials, and
to engaging of its plant in work upon other contracts.
There was utter failure of the plaintiff to show, exactly or
even approximately, the number of days of delay due to the
defendant's delay in furnishing amended drawings or motors;

although, from January 1st at least, the plaintiff kept an accurate record of every hour of labor employed upon each piece of machinery by every department of its works.  Prior to making the contract, it had made a careful estimate of the amount of the material and time acquired in each department to execute the contract; and with respect to most of the machines the time employed thereon after January 1st seems to have exceeded the estimated amount of time required for the entire work.  The plaintiff produced no record of time employed on the machinery prior to January 1st, giving as a reason that all time cards from September 16th to January 1st had been burned.  Blue, president of plaintiff, could not state what effect the changed plans had on the progress of the work.  Yertzell, plaintiff's foreman, said that about the only delay due to motors not arriving related to one of the 200-horse power motors for the welding rolls.  He also testified that it was not until the latter part of February that his company had gotten together all the material to make a single machine under the contract.  On cross-examination the same witness acknowledged that all the shop orders for the machines except the overhead pusher and charging trough (the order for which latter came to him November 21, 1901) had come to him on October 2, 1901.  This and much evidence of the same character, considered in connection with the fact that little if any work was done on defendant's machinery prior to January 1st, shows great disregard of the plaintiff's obligation under its contract.  There is a tacit admission by witness Blue that after January 14th his company was largely employed on other orders than the defendant's, giving as a reason that the motors had not arrived and that they had more profitable work on hand.

In our opinion the verdict is not supported by the evidence, and should be set aside, and a new trial awarded.

*Reversed.    Remanded.*