# CHARLESTON.

### EWERS *v.* MONTGOMERY *et al.*

Submitted February 22, 1910.    Decided December 20, 1910.

1. MASTER AND SERVANT—*Action for Services—Construction of Contract.*

    One employed to assist another in procuring coal, oil and gas options, and as notary public, to take and certify acknowledgments of the option contracts, should not in an action against

his employers for the value of his services be limited in his recovery to the statutory fee for taking and certifying such acknowledgments.

2.  PARTNERSHIP—*Creation of Relation—Particular Transactions.*
    Where two or more persons engage in the joint enterprise of procuring and selling options for leases for coal, oil and gas, putting in their labor or money in the enterprise, and each to share in the profits, they become partners, and agents of each other in the furtherance of the joint enterprise, and each become liable for the contracts of the other made within the general scope of and in furtherance of the common object.

3.  APPEAL AND ERROR—*Admission of Evidence—Harmless Error.*
    Though illegal evidence be admitted it will not be cause for reversal of a judgment if it clearly appears that such evidence could not have changed the result, if it had been excluded.

Error to Circuit Court, Putnam County.

Action by J. R. Ewers against J. C. Montgomery and others. Judgment for plaintiff, and defendant Montgomery brings error.

*Affirmed.*

*V. C. Champe* and *Dillon & Nuckolls,* for plaintiff in error.

*Alexander & Barnhart,* for defendant in error.

MILLER, JUDGE:

Plaintiff sued defendants jointly on the common counts in *assumpsit,* his bill of particulars filed with the declaration charging them as follows: ."1906, May 26, to Nov. 1st, inclusive; Taking options for coal, oil, gas, etc., $5.00 a day, $450.00. Off, credit, cash paid him, $10.00. Balance due Ewers, $440.00." On the trial plaintiff obtained a verdict and judgment for $215.00, and costs. Montgomery alone sued out this writ. of error.

Three points of error are relied on. The first is the refusal of the court below to give defendants' instruction to the jury number nine; the second the giving of plaintiff's instruction number one; and the third permitting plaintiff to testify in chief, in substance that defendant Nash, when employing him as notary to go along and take acknowledgments to options, and help talk up the business, he told him that defendant Montgomery was to pay him for his services, and that Nash had

told him at different times that Montgomery was ready to send him a check at any time for his services up to date.

Defendants' instruction number nine was intended to limit plaintiff's recovery to the statutory fee of fifty cents, allowed notaries for taking and certifying acknowledgments to deeds and other writings. And the instruction assumes, as the only fact proven, that plaintiff's employment was limited to this service. The evidence, however, is that plaintiff's contract made with Nash was that he should not only take acknowledgments to the option contracts but should go along through the country from day to day and assist in procuring such options. This is testified to not only by the plaintiff himself, but by Nash, who employed him, and the evidence further shows that plaintiff not only performed his contract to take acknowledgments and assist in securing options, but in some instances, without the assistance of Nash actually procured the options himself. We are cited to no authority and we know of none limiting the rights of a notary public when thus employed, simply because he is a notary public, to the statutory fee for taking acknowledgments. Our opinion is that the instruction was rightfully rejected.

Plaintiff's instruction number one complained of was: "The jury are instructed that if they find from the evidence that J. C. Montgomery and R. E. Nash employed plaintiff to procure the options in controversy, and were jointly interested in the profits arising from the optioning and sale of the coal options, taken by Jas. R. Ewers, then they are both liable for any expenses attached thereto." The objections to this instruction are two. First, that it assumes that Montgomery and Nash employed plaintiff. The evidence being as it is claimed that Nash alone employed plaintiff. The second is that the latter part of the instruction goes upon the theory that Montgomery would be liable with Nash, if the jury should find that they were jointly interested in the profits arising from the sale of the coal options, taken by Ewers. As to the first objection, the evidence does show that the plaintiff's contract was directly with Nash, but if Nash represented himself and Montgomery in a joint enterprise, involving the taking up and sale of coal options, Nash to put in his time, and Montgomery to furnish the money to pay the expenses of the enterprise, and Nash was authorized, either by

the contract or by necessary implication, to employ the plaintiff and others to assist him, as the evidence in this case strongly tends to show, the contract of Nash with plaintiff would bind Montgomery, and in that employment Nash would represent Montgomery, and this is the theory of the instruction. So this objection based upon the theory that there was no evidence on which to base it, and for which authorities are cited, is without merit. As to the second objection, it is true as contended that in some instances a mere profit sharing agreement would not render all parties to the agreement liable. And a good illustration of this proposition is found in *Clark* v. *Emery,* 58 W. Va. 643, cited in support of this objection, which the case does not sustain. The court held in that case that the contract between Clark and Emery did not make them partners in the enterprise. In brief the contract was that if Clark should sell the option contracts to certain persons that Emery, who controlled the options, would share the profits with him. Clark failed to sell as contemplated and agreed. Emery afterwards sold the property to other parties and Clark sued Emery for a share of the profits. It was decided, and we think rightfully decided, that the contract did not make Clark and Emery partners, but only entitled Clark to share in the profit in the event that he made sale to his parties as he proposed. He had no other interest in the options. The instruction we have here is predicated upon the theory of the plaintiff, which his evidence strongly supports, that the defendants engaged in a joint enterprise, by which Nash was to put in his time in procuring the options, and Montgomery was to furnish all the money to pay all the expenses incident thereto, make sale of the property, and that together they were to share the profits. The options were taken in the name of Nash who held the same in trust for himself and Montgomery. If this was the contract and for the purpose of this instruction we must assume it was, for the plaintiff's evidence tends to show it, defendants each had an interest in the property, were partners in the enterprise, and any contract made by the one or the other in furtherance of the common object of the association would bind both. This proposition is supported not only by the general rules of partnership, but particularly by the cases of *Howell* v. *Kelly,* 149 Pa. 473 and *Frazer et al* v. *Linton,* 183 Pa. 186, referred to with approval in *Clark* v.

*Emery, supra.* There may be a partnership to buy and sell lands for profit. *Canada* v. *Barksdale,* 76 Va. 899. And there is nothing in the character of options on coal lands precluding them from being made the subject of a co-partnership agreement. This Court said in *Setzer* v. *Beale,* 19 W. Va. 274, that a partnership as between the parties themselves is a voluntary contract between two or more persons for joining together their money, goods, labor, or any other thing, with the understanding that there shall be a communion of profits. This is a repetition of the common definition of a co-partnership, found in the text books on the subject and in other judicial decisions. It is not even essential that the parties to the contract shall be bound to share the losses. *Miller* v. *Simpson,* 107 Va. 476. We see no error in this instruction.

As to the last point made, did the court err, as suggested, in admitting the hearsay evidence? As we have observed the defendants' objection was overruled, in the language of the record, "for the time being." Undoubtedly the testimony of the plaintiff as to what Nash told him would be incompetent to establish the liability of Montgomery as partner or otherwise, but Nash was himself introduced as a witness for the plaintiff, and the plaintiff proved by him all the facts which the plaintiff undertook to establish by his own evidence, objected to. The testimony of the plaintiff as to the declaration of Nash, therefore, added nothing to the force and effect of Nash's own testimony, and we do not see how the defendants or either of them were in any way prejudiced by the error of the court in admitting those declarations, and we think the case here is brought clearly within the case of *State* v. *Hull,* 45 W. Va. 767, holding, that if it clearly appear that it, the illegal evidence, could not have changed the result if it had been excluded, it will not be cause for reversing the judgment. This same rule is stated in *Dent* v. *Pickens,* 34 W. Va. 240; *Webb* v. *Big Kanawha & O. R. Packet Co.,* 43 W. Va. 800; *Foundry Co.* v. *Steel & Iron Co.,* 62 W. Va. 289; *N. & W. Railway Co.* v. *Briggs,* 103 Va. 105 (48 S. E. 521).

Seeing no reversible error in the judgment below it must be affirmed.

*Affirmed.*