# CHARLESTON.

## S. S. MAGUET JR. v. L. N. FRANTZ

Submitted February 19, 1924.    Decided March 11, 1924.

1.  VERDICT—*Without Evidence to Support Should be set Aside on Proper Motion.*

    Where the verdict of a jury is without evidence to support it, the court should set it aside upon the proper motion. (p. 733).

2.  LANDLORD AND TENANT—*Mere Relation of Not Confidential or Fiduciary in Character.*

    The mere relation of landlord and tenant, without more, is not confidential or fiduciary in character. (p. 733).

3.  LEASE—*Holder of With Restrictive Clause as to Use Not Bound to Disclose to Sub-lessee Ownership of Property When no Inquiry is Made Relative Thereto.*

    Where one holds a lease of a store room containing a clause which restricts the use of the premises and sub-lets it to another by lease containing the same provision, he is not bound to disclose to his sub-lessee that he is not the owner of the premises, where no inquiry is made relative to the ownership and the parties deal at arm's length. (p. 733).

4.  SAME—*Failure to Disclose Ownership of Building to Sub-lessee When no Inquiry Made Not Ground for Action for Fraud and Deceit.*

    An original lease provides that the premises shall not be used for manufacturing purposes or for any business that by its nature will impair the value of the property or will be objectionable to surrounding realty owners or the tenants thereof, or which is entitled in law a nuisance. Without inquiry from, or giving information to, the sub-lessee, as to the ownership of the permises, the lessee executes a sub-lease thereon, containing the same restrictions. The sub-lessee installs a bakery on the premises with the knowledge and acquiescence of the lessee, which the sub-lessee is afterward compelled to remove at the suit of the original lessor, because of his violation of the restrictions in the original lease. In an action for damages for fraud and deceit by the sub-lessee against the lessee for failure to disclose that the lessee was not the owner of the property, the plaintiff can not recover and a verdict in his favor should be set aside. (p. 734).

Error to Circuit Court, Cabell County.

Action by S. S. Maguet, Jr., against L. N. Frantz. Ver-

dict for plaintiff was set aside by the court and he brings error.

. *Affirmed.*

*D. B. Daugherty,* for plaintiff in error.

*Vinson, Thompson, Meek & Renshaw,* and *Deegan & Hall,* for defendant in error.

MEREDITH, PRESIDENT:

Plaintiff obtained a verdict for $15,000, which the circuit court set aside, and he obtained a writ of error.

The action is styled "assumpsit"[1] though as a matter of fact it is for "fraud and deceit". As no complaint is made here as to the sufficiency of the declaration, we need not consider whether the declaration is sufficient. .

Briefly stated, plaintiff says that on August 11, 1919, defendant falsely and fraudulently represented to plaintiff that the defendant was the owner of and had the right to lease to the plaintiff a certain designated store room for the period of ten years; that pursuant to such representations defendant, on that day, executed and delivered to plaintiff and D. N. Maguet, who thereafter transferred his interest therein to plaintiff, a lease on said store room for five years, with the privilege of renewal thereof, at a rental of $150 per month; that plaintiff, relying upon said representation, accepted the lease; that defendant then knew that plaintiff accepted the lease expressly intending to install in the store room a bakery, and defendant consented thereto; that plaintiff did install the bakery and continued to operate it with defendant's consent for about three years, until he was evicted therefrom; that defendant was not the owner of the store room and did not have the right to lease it for the purpose and period aforesaid, but was a mere tenant under one, Dr. Vickers, who was the owner; that defendant held it under a lease under the terms of which the business of a bakery could not be conducted on said premises, and which fact was fully known to defendant and by him fraudulently concealed from the plaintiff; that in 1922 the owner of the storeroom obtained an injunction by which plaintiff was compelled to remove his bakery therefrom and his business

was destroyed, he was deprived of the profits from his business and suffered great damage thereby.

Defendant pleaded in abatement that plaintiff was on September 29th, 1922, adjudicated a bankrupt by the District Court of the United States for the Southern District of West Virginia, and thereafter a trustee of his estate was duly appointed and who qualified and was then acting as such, and that under the Acts of Congress relating to bankruptcy the right of action, if any, became vested in and was then the property of such trustee; to this plaintiff specially replied that the trustee was fully advised of the chose in action sued upon in this case but that he rejected it as he had a lawful right to do; that he had fully administered said estate, and that plaintiff was then the lawful owner of the chose in action sued on.

It was stipulated on the record that plainitff was adjudicated a bankrupt, his estate lawfully administered, and the claim sued on here was not listed among his assets in the bankruptcy proceeding, though there was no tender of issue nor proof on the question whether the trustee rejected plaintiff's claim as an asset of the estate.

Bearing in mind the averments of the declaration, let us examine the facts. Plaintiff, who lived in Portsmouth, Ohio, came to Huntington in August, 1919, to locate a room in which to engage in conducting a New System Bakery. Seeing a "For Rent" sign at 410 Tenth Street, he went to see the real estate agent who had charge of leasing the storeroom, T. J. Noonan. Plaintiff told Noonan he wanted to use the room for a baking business. It appears that the terms of the lease were then substantially agreed upon, but as defendant, Frantz, was out of the city, no lease was then executed. Plaintiff made a deposit of $25.00 and prepared to move in. He had to buy his machinery and equipment, which took some days. It appears that in his negotiations with Noonan he asked whether he might change certain windows in the building, but that Noonan told Maguet that Frantz "did not dare to have the windows changed." This is Maguet's own statement. In about ten days Frantz came home and executed a lease for the storeroom substantially as aver-

red in the declaration, except that it contains this important restrictive clause:

> "It is further understood and agreed between the parties hereto that the premises this day leased shall not be re-leased, assigned, or sublet without the consent in writing of the Lessor and that the said premises are not to be used for a grocery store, ladies' ready-to-wear store, nor shall the same be used for manufacturing purposes or for such character or kind of business as by its nature would impair the value of said property, or be objectionable to surrounding realty owners or the tenants thereof, nor shall any business be conducted therein which is entitled in the law a nuisance."

The lease on its face does not show who was the owner of the premises in fee; nor does it refer in any way to the fact that Frantz was a lessee nor state the use to which Maguet was to devote the storerrom. It merely calls it a storeroom but does not show the character of business Maguet was to carry on in it. Whether Maguet was advised at the time he entered into the contract that Vickers was the owner, and that Frantz himself was holding under a lease is a point in dispute. Frantz says he advised Maguet that Dr. Vickers owned the building and that he was only a lessee; that there were restrictions in his lease which he would place in any lease he made, but that if there was no objection from Dr. Vickers regarding the bakery, there would be none from him. Noonan testifies to practically the same effect. He says that when Maguet asked him about changing the windows or front so that he might place the oven up where people could see the bread baking, he told Maguet that this change would have to be arranged between him, that is, Maguet, and Dr. Vickers, as Frantz held the room under lease from Dr. Vickers. All this is denied by Maguet, who says that he did not know that Frantz did not own the building until about six months after he had installed his bakery, when Frantz called him to his office and informed him of complaints he had received from tenants in the building who were objecting to the bakery. Dr. Vickers seems to have been away for the greater part of the three years. Whether he knew the bakery was located in the building during all

this time is not disclosed. It is quite likely that he knew of it long before he returned; his rent seems to have been regularly paid, not by Maguet, but by Frantz. His lease to Frantz contains the same restrictive clause that was inserted in Maguet's lease. Soon after Dr. Vickers' return he filed a bill enjoining Maguet, Frantz, and Noonan, who seems to have acquired an interest in the Vickers-Frantz lease, from conducting a baking business upon the premises, on the ground that that was a manufacturing business; that it was a nuisance, and such as to cause various complaints from his other tenants in the building because of the noise, smoke and odors, in violation of the terms of his lease. The three defendants answered the bill denying that the conduct of a bakery on the premises was manufacturing within the meaning of the lease, or that the bakery constituted a nuisance, and denied that the lease had been violated. The circuit court found in favor of the plaintiff and the injunction was made permanent. Thereupon, Maguet was compelled to remove his bakery to a new, but less desirable location. This, of course, caused him some loss. He was soon adjudged a bankrupt; the equipment brought at forced sale only $1600, though he says it cost $12,000. Frantz sold his lease to Dr. Vickers for about $2300, and Maguet released his interest in consideration of a month's rent. Maguet sues for damages, based upon his loss in the value of his equipment, injury to his business and consequential loss of profits. His claim is grounded upon the alleged deceit of Frantz in failing to inform him that he was not the owner of the building; mere silence, not active concealment. His declaration states that Frantz said he was the owner; but his testimony is to the effect that Frantz never said a word about it until six months after he had installed his bakery, when he told him about complaints from the other tenants. His contention here is that Frantz can not rely upon the restrictive clause in the lease because he waived that by permitting Maguet to install the bakery, and accepting rent after full knowledge; that by his silence and acquiescence he is estopped from claiming that Maguet was not authorized to install and operate the bakery. That is true. But did he thereby

waive himself into a liability to Maguet by permitting him to incur the loss? We do not think so.

This is not a suit for breach of any warranty in the lease, but in the face of a covenant therein that the plaintiff would not use the building for manufacturing purposes, or install any business that was a nuisance or that would cause complaint from the other tenants. Let us assume that plaintiff's version of what was said or not said by Noonan and Frantz is correct; that plaintiff was not informed that Frantz was not the owner, but a mere lessee of the storeroom; that nothing was said about the ownership of the building. The plaintiff knew that he was not to carry on a manufacturing business or do any of the other forbidden things there. He so covenanted. We think the most likely view is that neither party thought that the conduct of a bakery was manufacturing within the meaning of the lease, but if so, both made a mistake,—a mistake of law. But under the terms of the lease, even if it should not be inhibited because it was a manufacturing business, yet if it should "impair the value of said property, or be objectionable to surrounding realty owners or the tenants thereof" or be a nuisance it was likewise forbidden. Now according to plaintiff's own testimony his business was so conducted that the other tenants actually made complaints. In the injunction suit Dr. Vickers alleged that he had received many complaints because of the character of the business, owing to the offensive noises, heat, steam, and odors emanating from the bakery which penetrated into the living or residential apartments above, so as to render the apartments almost untenantable, and he exhibited with his bill a number of written complaints. He further alleged that the business was conducted in such a manner as to constitute a nuisance, that it impaired the value of his property and was highly objectionable to surrounding realty owners. So that if these allegations were true, then plaintiff, even though he were authorized to conduct a bakery on the premises, violated the specific restrictions in the lease. Evidence was taken at the bar of the court in the injunction suit and plaintiff was permanently enjoined from operating the bakery on the premises; that was all. He could have occupied the storeroom for any purpose not forbidden by the terms

of the lease. Just on what specific ground or grounds the court awarded the permanent injunction does not appear. The testimony in the injunction suit is not in this record. The court found for the plaintiff, and, in the absence of a specific finding, we are justified in concluding that he found for plaintiff, not alone because the bakery business was a manufacturing business within the meaning of the restrictive clause of the lease, but that the plaintiff was conducting a business which also caused complaints from Dr. Vickers' other tenants in the building, and as well also that it impaired the value of the property. So upon plaintiff's own showing he was not entitled to a verdict, and defendant's instruction to find for him should have been given.

It was as much the duty of plaintiff to know whether carrying on the business of a bakery was manufacturing within the restrictive clause of the lease as it was the duty of the defendant. Besides, plaintiff nowhere says that he would not have installed the bakery had he known that defendant was not the owner of the building. They were dealing at arm's length. Defendant took no active step to deceive the plaintiff. He merely remained silent. We do not think he was under any obligation to inform the plaintiff that Dr. Vickers owned the property. There was no confidential relation between them. Plaintiff did not inquire about the ownership. Had he asked the defendant, and defendant had told him that he was the owner, the situation might be different. We think the rule should apply as stated by the Supreme Court of the United States in *Doyle* v. *Union Pacific Ry. Co.*, 147 U. S. 412, 37 Law. ed. 223, 13 Sup. Ct. Rep. 333:

> " 'The general rule, both in law and equity', says Story on Contracts, §516, 'in respect to concealment is, that mere silence in regard to a material fact, which there is no legal obligation to disclose, will not avoid a contract, although it operates as an injury to the party from whom it is concealed'. But the relation generally which raises the legal obligation to disclose acts known by one party to the other, is where there is some especial trust and confidence reposed, such as where the contracting party is at a distance from the object of negotiation, when he necessarily relies on full

·disclosure; or where, being present, the buyer puts. the seller on good faith by agreeing to deal only on his representations. In all these and kindred cases, there must be no false representations, nor purposed concealments; all must be truly stated and fully disclosed."

We find nothing upon the record which required defendant to diclose to plaintiff that he was not the owner of the storeroom; nor that had he done so, the plaintiff would have acted differently. Plaintiff got all the privileges in his lease that defendant had under the Vickers lease. He was not evicted from the premises, but gave them up voluntarily, because he could not conduct thereon a forbidden business. He has no legal cause for complaint.

We therefore affirm the judgment.

*Affirmed.*