BELLE FLOOD v. DESCHAMPS MOTOR COMPANY, T. A. LIDE, G. B. TROXLER AND J. T. STEWART AND JESSE FLOOD v. DESCHAMPS MOTOR COMPANY, T. A. LIDE, G. B. TROXLER AND J. T. STEWART.

(Filed 4 January, 1933.)

Evidence K d—Form of hypothetical questions in this case held not to constitute reversible error.

Facts not warranted by the testimony offered at the trial may not be assumed in a hypothetical question to an expert witness, but in this case it is held there was not such a departure from the rule as to constitute reversible error.

CIVIL ACTION, before *Harding, J.,* at February Term, 1932, of ROCKINGHAM.

Plaintiff alleged that on or about 15 June, 1929, the defendants, Lide and Troxler, were employees, agents and representatives of the Deschamps Motor Company, which said corporation was engaged in the business of buying and selling automobiles, and that the defendant, J. T. Stewart, was a prospective purchaser of a Ford automobile from the defendant corporation. The place of business of defendant Motor Company was on Scales Street in the city of Reidsville, opposite the home of plaintiff. It was further alleged that on said date the defendant, Stewart, was driving an automobile belonging to the Motor Company for the purpose of testing it with the view of becoming a purchaser thereof, and that the defendants, Lide and Troxler, were in the car with Stewart for the purpose of assisting in the demonstration. It was

averred that Stewart was an incompetent driver and not familiar with the mechanical operation of the car, and that as a result he drove the car out of the place of business of the Motor Company "at an excessive and unlawful rate of speed across said public highway into the front yard of plaintiff where the plaintiff's children were at play and narrowly averted running over said children, and would have struck said children except for the quick action of L. A. Lide in taking hold of the steering wheel of said car and running said automobile against the church adjacent" to the home of the plaintiff. The complaint further declared that by reason of such driving of said automobile across the edge of her lot "in close proximity to said house the said plaintiff was overcome with fright, and the child with which the plaintiff was pregnant, was killed from terror occasioned by its mother and the great shock sustained by her nervous system."

The second suit brought by Jesse Flood against the said defendants alleged substantially the same state of facts as contained in the complaint of plaintiff, Belle Flood. The two cases were consolidated at the trial.

The plaintiff offered evidence tending to show that she was injured on 15 June, and that she was in a state of advanced pregnancy, and thereafter a child was born dead on or about 1 July, 1929. The evidence offered by the defendant tended to show that the occurrence took place on 1 June, 1929, and that while Stewart lost control of the car and it ran against the edge of plaintiff's yard that she was not in the yard at the time, and consequently the subsequent abortion was in nowise attributable to any act of defendants or either of them.

Issues of negligence and damages were submitted in each case. The jury answered the issues of negligence in favor of defendant, and from judgment upon the verdict the plaintiff appealed.

*P. T. Stiers for plaintiff.*
*Glidewell & Gwynn for defendant.*

PER CURIAM. A perusal of the record demonstrates that evidence was offered by both parties in an effort to solve the outstanding issue of fact, to wit: What was the cause of the abortion? The testimony offered by the plaintiffs was designed to demonstrate that the abortion was caused by the fright of the mother when she observed the danger to her children playing in the yard, brought about by the negligence of defendants in permitting the automobile to get beyond their control. While she did not allege in the complaint that she fell in an effort to snatch one of her young children out of the path of the oncoming automobile, she offered evidence to that effect. The defendants offered testimony

tending to show that the injury happened on 1 June, and that the child was born on 1 July. There was medical testimony to the effect that a physical injury sufficient to produce abortion would have become operative in a much shorter period than thirty days. Medical testimony was also introduced tending to show that fright alone would not produce an abortion.

The main group of exceptions deals with the admission of the opinions of medical men, touching the causes, symptoms and progress of abortion. It is asserted that these opinions are in response to hypothetical questions not based upon evidence. True it is, that the principle determining the competency of hypothetical questions and the answers thereto, forbids the assumption of facts or states of fact not warranted by the testimony offered at the trial. *S. v. Holly,* 155 N. C., 485, 71 S. E., 450. Hypothetical questions were propounded by counsel for both parties upon various aspects of the testimony, and it does not appear that there was a departure from the rule, of sufficient moment to upset the judgment. Physicians testified that syphilis was one of the causes of abortion, but no witness said that the plaintiff suffered or had ever suffered with such disease. Indeed, the questions with respect to such malady occurred in developing the various causes of abortion.

An examination of the entire record and of all exceptions does not produce the conclusion that error of law occurred in the trial of the cause.

Affirmed.