66 S.E.2d 545 (1951)
STATE
v.
EVANS.
No. 10347.
Supreme Court of Appeals of West Virginia.
Submitted April 24, 1951.
Decided May 29, 1951.
Rehearing Denied August 2, 1951.
Dissenting Opinion September 10, 1951.
*546 Salisbury, Hackney & Lopinsky, Jackson D. Altizer, all of Charleston, for plaintiff in error.
William C. Marland, Atty. Gen., George W. Stokes, Asst. Atty. Gen., for defendant in error.
LOVINS, Judge.
F. E. Evans, a practicing physician and surgeon, was indicted in the Intermediate Court of Kanawha County, West Virginia, and was tried, convicted, and sentenced in that court of the crime of procuring an abortion on the body of an unmarried female, hereinafter referred to as "prosecutrix". He prosecutes a writ of error to this Court.
On or about the first day of January, 1949, the prosecutrix, a student in a Kanawha county high school, between seventeen and eighteen years of age, conceived a child. Realizing her condition on or about March 23, 1949, she interviewed the defendant for the purpose of procuring an abortion. The defendant did not indicate his willingness to perform the abortion, but gave the prosecutrix a card with the name of a woman written thereon and told her to go and see that person. The prosecutrix made an arrangement by telephone to meet the woman the following morning at nine o'clock. Pursuant to this arrangement, she went to see the person, hereinafter designated as "woman", and told her that she wanted an abortion performed upon herself, and arranged with the woman to meet her at the defendant's office on the following morning at nine o'clock.
The prosecutrix went to the office with her cousin at the appointed hour, waited for a time, then started to leave the office; but on leaving she met the woman whom she had theretofore interviewed and returned to the office of defendant. After a short wait the prosecutrix went into the consultation room of the defendant with the woman. The prosecutrix paid the woman the sum of $75.00. The prosecutrix was placed on an examining table, her eyes were covered, and her face was wiped with a cold towel. She testified that she felt a sharp pain in her abdomen. She remained *547 in defendant's consultation room for about ten minutes, left defendant's office accompanied by the woman and her cousin, started down the stairs to the street level and fainted. She was then taken back to defendant's office, the automobile in which she was traveling was brought to the street entrance to defendant's office, and the prosecutrix, her cousin, and the woman got in the automobile and went to the woman's home. During that time the woman told her to take a laxative.
The alleged abortion was performed on Wednesday. On the following Friday morning the prosecutrix emitted a small amount of blood from her genital organs, and, on the following Saturday, she went to the office of defendant.
On occasion of her third visit to defendant's office, during her stay of fifteen minutes, she told him about the emission of blood. Defendant advised her that she was "all right". On the Tuesday following she returned to school where she was a student. During the rest of the school term she engaged in her usual activities and graduated in June, 1949.
After her graduation the prosecutrix went to work as a waitress in a restaurant in Charleston, West Virginia. While working as a waitress she went to another doctor, ostensibly to be examined for the procurement of insurance, and this physican disclosed to her that she was pregnant.
Prosecutrix testified that about two weeks before the birth of her child she emitted water and blood from her genital organs. On or about the 30th day of June, 1949, she was sent to the Salvation Army Hospital in Charleston where she was delivered of a baby which had been conceived on or about January 1, 1949, as hereinabove stated. The baby lived about fifteen minutes.
The prosecutrix is partially corroborated in the details of her actions by her cousin, her aunt, and other witnesses. The woman who was an eye witness to the treatment of the prosecutrix by defendant, being a practical nurse, testified that defendant used a vaginal speculum. The prosecutrix did not know what was used since her eyes were covered.
When the child was born a considerable portion of the skin on the cranium had been detached from the bone, was necrotic, and had the appearance of having been detached from the cranium as a result of violence. There were also large bruises on the child's legs. Medical testimony on behalf of the state indicates that the child could have been injured on or about the 23rd of March and remained in the mother's womb until its delivery approximately three and one-half months later, one of the physicians who testified having seen the child after its death. No autopsy or pathological examination of the child's body was had. Another physician testified on behalf of the defendant that in his opinion the injury to the scalp, hip and leg of the child could not have been inflicted in March and the child carried in its mother's womb until its delivery on the 30th day of June. The prosecutrix testified that she had done no act to cause an abortion between the time when defendant treated her in March and the date of delivery of the child.
The state was permitted to introduce the testimony of five witnesses, by four of whom it was shown that the defendant had performed abortions on them. The alleged abortion on one of these witnesses occurred about June 18, 1949, approximately three months after the treatment of the prosecutrix. The other three alleged abortions were committed prior to the treatment of the prosecutrix. The testimony of the witnesses with regard to the four alleged abortions was admitted by the trial court upon the theory that it was to show the motive, design and intent of the defendant.
Upon the testimony above stated, the jury returned a verdict of guilty as charged in the indictment and the trial court sentenced defendant to an indeterminate sentence in the penitentiary of this state for a period of three to ten years. A writ of error was denied defendant upon application to the circuit court of Kanawha County, and thereafter this court, upon *548 petition of defendant, granted a writ of error.
The defendant denies that he performed any abortion on the prosecutrix, but does admit treating her, saying that he applied a packing to her vagina. He also denies committing abortions on the four witnesses who were introduced to show motive, design and intent. There is considerable conflict in the testimony as to what he was paid for the abortions. Defendant admits that he was paid small sums from one to five dollars. Witnesses testified that he was paid sums ranging from fifteen to seventy-five dollars. Other testimony was introduced by defendant to show that he treated indigent persons free of charge.
Defendant assigns many errors, which we summarize: (a) The court erred in admitting evidence offered by the state, and (b) In overruling the motion to set aside the verdict and grant a new trial on the ground that the verdict is contrary to law and evidence.
The various objections to specific items of evidence will be stated and discussed together. The defendant takes the position that the hypothetical questions propounded to the physicians permitted them to testify as to a possibility rather than a probability, and draws a distinction between what the action of the defendant could cause and what such action would cause. The record shows that the hypothetical questions were propounded so that the witness could frame his answer on what could be the result of the action of the defendant. Authorities are cited to sustain the position taken by the defendant, among which are: 3 Jones Commentaries on Evidence, Second Edition, page 2458; 20 Am.Jur., Evidence, Secs. 787, 788; 32 C.J.S., Evidence, § 551(b); Duvall v. Brooklyn Cooperage Co., Mo.App., 275 S.W. 586; Rogers on Expert Testimony, Third Edition, Sec. 137; Kime v. Owens, 191 Iowa, 323, 182 N.W. 398. In the case of Graves v. Katzen, 112 W.Va. 467, 164 S.E. 796, this Court held that a properly qualified medical expert could testify "as to the probable future consequences of an injury, provided the consequences anticipated are such as in the ordinary course of events may reasonably be expected to happen, and are not merely speculative or possible." Testimony by an expert witness is not objectionable for the reason that it relates to whether a given effect might result from a certain cause. Such testimony is not speculative "but is a common and proper mode of examination." "Foose v. Hawley Corp., 120 W.Va. 334, 198 S.E. 138, 139. See Rogers on Expert Testimony, Third Edition, Sec. 49; Carroll v. Missouri Power & Light Co., 231 Mo.App. 265, 96 S.W.2d 1074; Castanie v. United Rys. Co., 249 Mo. 192, 155 S.W. 38, L.R.A.1915A, 1056; Industrial Commission of Ohio v. Holman, 40 Ohio App. 426, 179 N.E. 192; Jackson v. Harries, 65 Utah 282, 236 P. 234; Galveston, H. & S. A. Ry. Co. v. Harris, Tex.Civ.App., 172 S.W. 1129; El Paso Electric Ry. Co. v. Jennings, Tex. Civ.App., 224 S.W. 1113; Standard Oil Co. v. Stern, 167 Md. 211, 173 A. 205; Montevallo Mining Co. v. Little, 208 Ala. 131, 93 So. 873.
We think this Court, in Foose v. Hawley Corp., supra, committed itself to the principle that hypothetical questions may be framed so as to elicit an answer whether the result could have been caused by a given event or series of events. In view of a discretionary power of a trial court, we think this is a sound rule. There may be some support for the position of the defendant from the authorities hereinabove mentioned, but we are not disposed to follow those authorities. We therefore hold that there was no error in the framing of the hypothetical questions in this case.
Defendant objects to the hypothetical question on the ground that it was predicated on the vital fact of the insertion of an instrument into the uterus of prosecutrix, and that such insertion was not established by proof and was not stated in the question to the physician. A hypothetical question should be grounded on facts admitted or proved. Bowen v. City of Huntington, 35 W.Va. 682, 14 S.E. 217; State v. Taylor, 105 W.Va. 298, 306, 142 S.E. 254; Cline v. Evans and Tallman, 127 W.Va. 113, 120, 31 S.E.2d 681; State v. Painter, W.Va., 63 S.E.2d 86.
*549 We have carefully examined the record herein and there is no evidence tending to show the insertion of any instrument in the uterus of the prosecutrix, but we do have testimony of the prosecutrix to the effect that when she was being treated by the defendant she felt a sharp pain in her abdomen, and we have the surrounding circumstances that she fainted on leaving the defendant's office, that shortly thereafter she passed blood, and that the woman who was with the prosecutrix in defendant's consultation room testified that defendant inserted a vaginal speculum into the vagina of the prosecutrix, all tending to indicate the use of an instrument. The woman who accompanied prosecutrix to defendant's office first disclaimed any knowledge as to whether any instrument was placed in the genital organs of the prosecutrix. Thereafter, on cross examination, she testified that a vaginal speculum was inserted. We are not prepared to say that that is correct. It is a reasonable assumption that some kind of treatment, either medical or surgical was given the prosecutrix which caused a disturbance of her genital organs. This assumption is supported when we consider the following question and answer adduced during the examination of the woman who was present when the prosecutrix was treated: "Q. Tell this jury whether an abortion was committed on * * * [prosecutrix] at that time. A. Naturally that is what the girl was there for. I am not in position to say just what brought that about." We do not think that it was vital to the state's case to prove, by direct testimony, that defendant inserted some kind of instrument into the uterus of the prosecutrix. "In propounding hypothetical questions to expert witnesses, counsel may without error, assume facts fairly inferable from the evidence, in accordance with their theory of them." State v. Cook, 69 W.Va. 717, 728, 72 S.E. 1025, 1026.
The next error assigned relates to the admission of the testimony of the five witnesses relative to the defendant having committed illegal abortions on four of such witnesses. The first of the alleged illegal abortions occurred in the year 1946 or 1947. Another occurred in the month of June, 1948. Another occurred in the month of March, 1949. The alleged illegal abortion here considered occurred about the middle of March, 1949. Another witness was permitted to testify that the defendant performed an illegal abortion on her in the month of June, 1949. It will thus be seen that evidence was admitted showing similar illegal acts allegedly committed by the defendant both prior and subsequent to the alleged illegal abortion here considered. The question of the admissibility of this testimony therefore falls into two categories: (a) Are criminal acts similar to the one under inquiry, done prior thereto, admissible to show motive, design and intent? (b) Are such acts performed subsequent to the one under inquiry admissible for the same purpose?
It is a general rule that distinct criminal acts other than the one charged, for which the accused is being tried, are inadmissible, but there is a well defined exception to that general rule which is recognized and applied in this and many other jurisdictions.
The principle here applicable that criminal actions distinct from the one charged may show intent, motive and design to commit the crime for which the defendant is being tried constitutes the exception.
Code, 61-2-8, provides in part: "Any person who shall administer to or cause to be taken by, a woman, any drug or other thing, or use any means, with intent to destroy her unborn child, or to produce abortion or miscarriage, and shall thereby destroy such child, or produce such abortion or miscarriage, shall be guilty of a felony * * *. No person, by reason of any act mentioned in this section, shall be punishable where such act is done in good faith, with the intention of saving the life of such woman or child." It is thus seen that intent is an integral part of the crime of abortion. Though the defendant in the instant case denies doing any act or applying any treatment for the purpose of causing an abortion on the prosecutrix, we think such denial put in issue the intention of the defendant, when *550 he treated the prosecutrix' genital organs, as he testified he did.
This exception has been treated in various ways by courts in other judisdictions. See II Wigmore on Evidence, Third Edition, Secs. 304, 359; 1 Am.Jur., Abortion, Sec. 42. In the case of State v. Cragun, 85 Utah 149, 38 P.2d 1071, various authorities are cited and compared. The Supreme Court of Utah held that the evidence of other and similar acts was not admitted to show intent or motive, but in that case was admitted to establish defendant's guilt. In People v. Lonsdale, 122 Mich. 388, 81 N.W. 277, the court adopted the principle that proof of other offenses of a similar character was inadmissible to show motive or intent where the existence of such motive or intent was a necessary conclusion from the act done. In People v. Hodge, 141 Mich. 312, 104 N.W. 599, the court distinguished that case from People v. Lonsdale, supra, and held the admission of evidence of other acts was not erroneous, the defendant in People v. Hodge, supra, having defended the charge on the ground that the act was done for legitimate purposes. Evidence of other and similar acts has been held admissible to rebut evidence that the criminal abortion was innocently performed. People v. Hickok, 56 Cal.App. 13, 204 P. 555. In Clark v. Commonwealth, 111 Ky. 443, 63 S.W. 740, it was held that evidence of other abortions should be admitted to show intent or motive if the defendant admitted the performance of an abortion and attempted to justify it on the grounds of necessity. See State v. Choate, 228 N.C. 491, 46 S.E.2d 476; State v. Brown, 202 N.C. 221, 162 S.E. 216; State v. Smith, 103 Wash. 267, 174 P. 9; Clyne v. State, 123 Ohio St. 234, 174 N.E. 767.
This Court has adopted a different approach. In the case of State v. Lewis, W.Va., 57 S.E.2d 513, 516, in which the defendant was charged with murder on account of a criminal abortion, this Court held that in a criminal case "proof of another offense chargeable to the defendant is admissible to show motive or intent, if such other offense is similar and near in point of time to, has some logical connection with, and tends to establish the commission of, the specific offense charged against the defendant, and indicates that such specific offense is part of a system of criminal action'." See State v. Johnson, 105 W.Va. 598, 143 S.E. 352; State v. Rush, 108 W.Va. 254, 150 S.E. 740; State v. Camp, 110 W.Va. 444, 158 S.E. 664; State v. Leatherwood, 112 W.Va. 339, 164 S.E. 295; People v. Hobbs, 297 Ill. 399, 130 N.E. 779; Clark v. People, 224 Ill. 554, 79 N.E. 941; People v. Mitchell, 368 Ill. 399, 14 N.E.2d 216; State v. Steadman, 216 S.C. 579, 59 S.E.2d 168. Evidence of similar acts has been held admissible though the defendant denied that any illegal operation had been performed. State v. Rowley, 197 Iowa 977, 195 N.W. 881; Smith v. State, 83 Okl.Cr. 209, 175 P.2d 348.
It is urged that although prior acts may be admissible, similar acts performed by the defendant after the alleged abortion committed on prosecutrix were not admissible. This Court has spoken on that subject in a trial involving the operation of a moonshine still. In State v. Adkins, 109 W.Va. 579, 581, 155 S.E. 669, it was held that where proof of a subsequent act has some logical connection with and tends to establish the specific crime charged, it is admissible. In the case of State v. Geene, 122 W.Va. 51, 7 S.E.2d 90, 91, the only point of the syllabus reads as follows: "On the trial of an indictment for a specific offense, evidence may be admitted of other similar acts so intimately connected with the alleged crime under investigation as to indicate on the part of the defendant a general design or system, inclusive of the crime charged. Such evidence may be in respect of subsequent acts as well as contemporaneous or prior ones." See State v. Beacraft, 126 W.Va. 895, 901, 30 S.E.2d 541; State v. Sturchio, 130 N.J.L. 259, 32 A.2d 577, 578; 1 Wharton's Criminal Evidence, Tenth Edition, Sec. 39; Underhill's Criminal Evidence, Fourth Edition, Sec. 187.
*551 In the case of People v. Hobbs, supra, evidence of criminal abortion subsequent to the one for which defendant was being tried was rejected on the ground that criminal abortions prior to that committed on the prosecutrix in that case had not been shown. In rejecting this testimony, the Court used the following language: "If there had been proof of former criminal abortions by the defendant, we would unhesitatingly hold that proof of the subsequent offense is also admissible to establish such criminal intent, but without proof of former offenses the proof of a subsequent abortion has no tendency whatever to prove that the defendant was engaged or intended to engage in such unlawful business * * *." [297 Ill. 399, 130 N.E. 784.]
In the instant case, the similarity of acts, established by testimony of five witnesses, is clear, as well as the similarity of the treatment given to four of those witnesses and the prosecutrix. In the case at bar the trial court carefully cautioned the jury that the evidence of similar and other acts was not admitted for the purpose of establishing the guilt of the accused, but for the purpose of showing design, motive and intent to commit an abortion upon the prosecutrix.
We are impelled to remark that evidence of other acts, though similar and closely connected in point of time to the one for which accused is being tried, unless carefully limited, may constitute an attack upon the character of the defendant and generate in the minds of a jury the idea that a defendant, being guilty of other similar acts, though the evidence is not sufficient to establish the criminal act for which he is being tried, they are justified in returning a verdict of guilty. But we think that in a case of abortion, where the line between criminality and legitimate professional practice is hazy and indefinite, intent may be determinative of innocence or guilt. Similar acts performed on other persons, resulting in criminal abortions, show intent, when closely connected in point of time. The interests of defendant with reference to such testimony were fully protected by the instructions of the court, and the evidence of other and similar alleged abortions was properly restricted. We see no error in that assignment.
Defendant contends that the trial court admitted testimony of a nurse and a member of the Department of Public Safety relating to medical matters, although such witnesses were not shown to be experts. The evidence of such persons, who expressed opinions to the effect that the injuries to the baby had been inflicted some time before its delivery instead of recently, clearly presented a basis for an inference. Although it may be that such testimony lacked weight on account of lack of qualifications of the witnesses as experts, the jury was entitled to give it such weight as they saw fit. See Kunst v. City of Grafton, 67 W.Va. 20, 67 S.E. 74, 26 L.R.A.,N.S., 1201; State v. Welch, 36 W.Va. 690, 15 S.E. 419.
Complaint is made by the defendant that the court erred in admitting hearsay testimony by one of the witnesses who testified to an alleged abortion committed subsequent to that here considered. The testimony of such witness was admitted for a legitimate purpose, although the witness's testimony, in part, was hearsay as to an immaterial occurrence. The material part of her testimony, tending to establish the intent of the defendant, was not hearsay. We fail to see any prejudice in its admission.
A member of the Department of Public Safety testified that he had seen a female come out of the office of defendant, and that she was followed to her home where she was so sick that members of the Department of Public Safety had to go to her room to obtain a statement. This testimony should not have been admitted, but we do not see prejudice therein sufficient to set aside the verdict. State v. Taylor, 130 W.Va. 74, 42 S.E.2d 549.
The assignment of error relative to overruling a motion to set aside the verdict as contrary to the law and evidence is without merit. As hereinbefore stated, the prosecutrix went to the defendant *552 for the express purpose of having an illegal abortion committed on her. The woman who went with her to the office of defendant seems to have been a participant in such illegal act, and knew the purpose of the treatment given prosecutrix. The defendant urges that the testimony shows that no instrument was inserted into the womb of the prosecutrix. That may be true, but testimony shows that defendant inserted a packing in her vagina; that the prosecutrix felt a sharp pain in her abdomen; and that the prosecutrix emitted blood from her genital organs shortly after the treatment, and approximately three and one-half months thereafter suffered a miscarriage. The medical testimony indicates that although it was unusual for the prosecutrix to suffer a miscarriage three and one-half months after the illegal operation, it was possible. A consideration of all the evidence leads to the conclusion that the defendant performed some kind of an act on the genital organs of the prosecutrix so as to cause an abortion on the 30th day of June, 1949. The record shows that that abortion was not necessary to preserve the life of the prosecutrix since she was apparently in good health when she went to defendant, and, even after the illegal acts of defendant, she seemed to have been normal until she was examined by the physician for the ostensible purpose of obtaining insurance. Nevertheless, shortly after that examination, she was delivered of a premature baby which had old wounds on his cranium and bruises on his hip and limb. Without resorting to conjecture or surmise in any way, we cannot avoid drawing the inference beyond all reasonable doubt that the premature birth and death of the prosecutrix' baby was caused by the action of the defendant, and that the jury verdict is supported by the evidence and authorized by law. Therefore, the judgments of the Intermediate and Circuit Courts of Kanawha County are affirmed.
Affirmed.
HAYMOND, Judge (dissenting).
Careful review and consideration of all the evidence in this case, as disclosed by the record, convince me that the State has utterly failed to prove that the miscarriage experienced by the prosecutrix approximately three and one-half months after she was treated by the defendant was due to or produced by any act of the defendant. I am also satisfied that the Intermediate Court of Kanawha County, in which the defendant was indicted, tried and convicted of the statutory crime of abortion, erroneously permitted, to the prejudice of the defendant and over his objection, the introduction of testimony of a member of the Department of Public Safety that in August, 1949, he had seen an unlisted female patient of the defendant enter and leave his office and that she was followed to her home where she was found to be ill and where a statement from her was obtained; and that the trial court also committed error in permitting, over the objection of the defendant, doctors, who testified in behalf of the State, to answer a hypothetical question propounded to them which elicited their opinion that an injury caused by an instrument used by the defendant could have produced a miscarriage experienced by the prosecutrix on June thirtieth, 1949. The insufficiency of the essential proof to sustain the verdict of guilty returned by the jury, the introduction of incompetent evidence prejudicial to the defendant, and the improper hypothetical question and the answers in response to it, in my opinion require reversal of the judgment of imprisonment of the defendant in the state penitentiary which the circuit court of Kanawha County refused to disturb and which the decision of the majority now affirms. Because of these errors, which the majority declines to recognize or correct by the reversal of the judgment and the award of a new trial, I respectfully dissent.
The only direct evidence of the commission by the defendant of the offense with which he is charged consists of the testimony of the prosecutrix, a practical nurse who frequently assisted the defendant in his practice, and the defendant himself.
The prosecutrix, a young unmarried woman, approximately eighteen years of age in March, 1949, testified that she had *553 intercourse with a man on the night of January 1, 1949, that following that occurrence, she missed her February menstrual period; that about the middle of March, believing that she was pregnant and having heard that the defendant would help her in her trouble, she saw him at his office in Charleston, and informed him of her condition; that he did not treat her on that occasion but referred her to a woman with whom she should consult; that she got in touch with the woman the next day, which was Tuesday, and arranged to meet her the following day, Wednesday, at the office of the defendant; that she and her cousin went there at the appointed time and, after some delay, met the woman and paid her seventy five dollars; that the defendant then appeared from one room of his office; and that she, the woman and the defendant went into his operating room. With regard to what then took place the prosecutrix gave this testimony:
"Q. In that room what happened? Just tell the jury everything that happened. A. He performed the abortion.
"Q. What did you do? A. I got on a table. He put me on a table and covered my eyes and wiped my face with a cold towel.
"Q. Did you feel anything happening or see anything happen? A. I didn't see anything happen but I could feel it.
"Q. What did you feel? A. Something sharp-like.
"Q. In your abdomen, you mean? A. Yes, sir.
"Q. Was there any pain? A. Not then.
"Q. After he operated and after you felt something sharp-like that you described, did the doctor do anything further with reference to packing or anything of that kind? A. He packed me.
"Q. Did you see that? A. Yes, sir, I was still on the table.
"Q. Did he tell you about that? A. Yes, sir, he told me." She also testified that she was in the operating room about ten minutes; that the defendant gave her no instructions but that the woman told her to take a bottle of citrate of magnesia later; that after leaving the office she fainted, returned to the office where she remained about fifteen minutes, and then left with her cousin and the woman; that two days later, about two o'clock in the morning, she felt a sharp pain in her stomach and "passed" some blood from her vagina; that the day following, she came again to the office of the defendant who then examined her and told her she "was all right"; that a few days later she returned to the high school at which she was a student and attended it regularly until her graduation on June sixth following; that she then worked as a waitress in a restaurant in Charleston; that about two weeks after she began to bleed again she went on June thirtieth to another doctor to be examined for insurance which she wished to obtain; that he examined her, told her she was about to have a miscarriage, and sent her to the Salvation Army Hospital in Charleston where that night she was delivered of a baby which died within a few minutes after it was born; and that between the time the defendant treated her in March and the birth of the baby on June thirtieth she did nothing to cause or produce the miscarriage.
The woman who was present when the defendant treated the prosecutrix in March, called as a witness for the prosecution, testified that the prosecutrix came to see her and told her she was pregnant; that she was present when the defendant examined and treated the prosecutrix in his office; that the prosecutrix became sick while she was on the table; that the witness stood near her and wiped her face, while the defendant examined her; that she saw the defendant have a speculum, an instrument to dilate an opening in which it is inserted, but that she did not see the defendant use any other instrument or insert the speculum in the body of the prosecutrix. When asked the direct question whether an abortion was performed upon the prosecutrix at that time her answer was: "A. Naturally that is what the girl was there for. I am not in position to say just what brought that about."
*554 The defendant admitted that the prosecutrix came to his office in March, 1949, and told him she was pregnant. He testified that at that time he refused to treat her but referred her to a woman who was later present when he treated the prosecutrix; that she returned to his office the next day with the woman; that the prosecutrix was in his office at that time for five or ten minutes; that he gave her a vaginal examination and in so doing used a speculum; that he found some irritation in her tubes and packed her vagina with medicated gauze to relieve congestion. To these questions he gave these answers:
"Q. While she was there being examined as you testified, state whether or not you inserted any instrument of any kind into her uterus? A. I did not.
"Q. In your experience in the delivery of children and the treatment of women for pregnancy, if there had been an instrument inserted in the uterus of this girl in March, 1949, with sufficient force to have injured the scalp of a baby, if there was one there, or to have injured the skin, if you would have had a puncture of the membrane or the sac in which the child was contained? A. Absolutely.
"Q. What effect would that have upon the emission of the foetus? A. It would have caused the loss of the foetus in a reasonable length of time.
"Q. Would it have been as long as June 30th? A. Oh, no." He denied that he performed any abortion upon the prosecutrix or any of the four women who testified in behalf of the State that he had committed other abortions on different occasions.
The State grounded its case against the defendant on the theory that in treating the prosecutrix in March, 1949, he inserted into her uterus an instrument which injured the foetus and produced the miscarriage which occurred about three and one-half months later on June thirtieth; and to sustain that position it introduced the testimony of three doctors. These witnesses admitted that it would be unusual for an injury inflicted by an instrument in March to cause a miscarriage three and one-half months later but testified, in answer to a hypothetical question that it could have done so. To counter this testimony the defendant produced a doctor, of many years experience as a specialist in the practice of obstetrics and gynecology, who expressed the opinion that an injury to the foetus caused by an instrument would have reptured the sac which contained the foetus and produced a miscarriage within days or hours and that a miscarriage as late as three to five weeks after an injury of that type could not have been caused by such injury.
The above recited facts which constitute the substance of the evidence in behalf of the State bearing upon the treatment of the prosecutrix by the defendant in March 1949, and its connection with the miscarriage which occurred approximately three and one-half months later on June thirtieth, do not satisfactorily or sufficiently prove that the defendant injured the foetus by the use of any instrument or that any act committed by him produced the miscarriage. The prosecutrix did not see the defendant use any instrument when he treated her in March 1949. Her statement that she felt a sharp sensation in her abdomen merely indicates that he might have used an instrument, but her testimony does not definitely establish the cause of her sensation. The woman who was present at the time merely saw the defendant have or use a speculum. She did not describe the manner in which he manipulated that instrument or indicate in any way that he used it forcibly or improperly. The testimony of the three doctors that an injury caused by the use of an instrument in March could have produced a miscarriage three and one-half months later is simply an opinion that it was possible that it resulted from an injury inflicted by means of an instrument. None of them stated that an injury caused by an instrument produced the miscarriage or expressed a definite or positive opinion to that effect.
Even if it be assumed, from the evidence, that the defendant, by the use of an instrument, injured the foetus in the uterus of the prosecutrix, the testimony of the *555 doctors produced by the State is merely an assertion that such injury might have caused the miscarriage. In brief, the evidence of these witnesses in behalf of the State on the vital point of the cause of the miscarriage is sheer speculation and, at most, creates only a mere suspicion that the defendant is guilty of the offense of which he is accused. The statute which creates the crime of abortion, Code, 1931, 61-2-8, provides that any person who shall administer to, or cause to be taken by, a woman, any drug or other thing, or use any means, with intent to destroy her unborn child, or to produce abortion or miscarriage, and by any of such acts, destroy such child, or produce such abortion or such miscarriage, shall be guilty of a felony. It is manifest that to commit the offense forbidden by the statute the defendant, by some act, must destroy the child, or produce an abortion or a miscarriage. Unless he accomplishes one of these results, he does not commit the offense, and to convict him of the crime of abortion, as charged in the indictment, it was incumbent upon the State to prove, beyond reasonable doubt, as an essential element of the offense, that the miscarriage, or the premature birth of the baby of which the prosecutrix was delivered, was caused by some act of the defendant committed with the intent to produce that result.
If it be conceded that the prosecutrix went to the defendant for the purpose of inducing him to perform an abortion and that he intended and acted to accomplish that purpose, still the evidence does not show, beyond reasonable doubt, that the treatment which he gave the prosecutrix actually caused the premature birth of her child and for that reason it does not support the verdict of guilty returned by the jury.
Proof that the defendant attempted to commit an abortion, but which fails to show that he succeeded in the attempt, is not sufficient to convict him of the offense with which he is charged which is not an attempt to commit an abortion but the commission of an abortion, a separate and distinct offense. A conviction based on mere suspicion of the guilt of the accused can not stand. State v. Crummitt, 129 W.Va. 366, 40 S.E.2d 852; State v. Hudson, 128 W.Va. 655, 37 S.E.2d 553, 163 A.L.R. 1265; State v. Beall, 98 W.Va. 189, 126 S.E. 569; State v. Chafin, 78 W.Va. 140, 88 S.E. 657; State v. White, 66 W.Va. 45, 66 S.E. 20; and a verdict of guilty in a criminal case, which is without sufficient evidence to support it, should be set aside. State v. Crummitt, 129 W.Va. 366, 40 S.E.2d 852; State v. Hudson, 128 W.Va. 655, 37 S.E.2d 553, 163 A.L.R. 1265. "Where the verdict of a jury is wholly without evidence on a point essential to a finding, or the evidence is plainly insufficient to warrant such finding by the jury, the same will be set aside and a new trial awarded." Point 2, syllabus, Closterman v. Lubin, 113 W.Va. 353, 167 S.E. 871, 872. Other decisions of this Court to the same effect are State v. Woolridge, 129 W.Va. 448, 40 S.E.2d 899; Clise v. Prunty, 112 W.Va. 181, 163 S.E. 864; Mingo Drilling Co. v. Persinger Supply Co., 111 W.Va. 278, 161 S.E. 234; Armour Fertilizer Works v. Finnell, 110 W.Va. 416, 158 S.E. 510; Bell v. Huntington Development & Gas Co., 106 W.Va. 155, 145 S.E. 165; Jones v. Kessler, 98 W.Va. 1, 126 S.E. 344; Magnet v. Frantz, 95 W.Va. 727, 124 S.E. 117, 37 A.L.R. 1450; Dunbar Tire & Rubber Co. v. Crissey and Riley, 92 W.Va. 419, 114 S.E. 804; Hatfield v. Workman, 35 W.Va. 578, 14 S.E. 153; Wandling v. Straw & Morton, 25 W.Va. 692. It is axiomatic that the guilt of a defendant in a criminal case must be established by competent evidence beyond reasonable doubt and that the burden of proving a person accused of crime guilty, not merely by a preponderance of the evidence, but beyond reasonable doubt, rests upon the State. State v. Crummitt, 129 W.Va. 366, 40 S.E.2d 852; State v. Hudson, 128 W.Va. 655, 37 S.E.2d 553, 163 A.L.R. 1265; State v. Campbell, 115 W.Va. 198, 174 S.E. 797; State v. Scurlock, 99 W.Va. 629, 130 S.E. 263; State v. Dudley, 96 W.Va. 481, 123 S.E. 241. In my judgment, this basic requirement has not been satisfied in this case and the verdict of the jury, not being supported by *556 sufficient evidence of the cause of the miscarriage, should have been set aside by the trial court. The refusal of the trial court to set aside the verdict and award the defendant a new trial constituted reversible error.
The majority concedes that the evidence of a member of the Department of Public Safety that he had seen a female patient of the defendant leave his office and that she was followed to her home and there found to be sick and a statement was taken from her in her room by members of the department was improperly admitted; but the majority disposes of this obvious error by the mere statement that "This testimony should not have been admitted, but we do not see prejudice therein to set aside the verdict." Though harmless error will not justify reversal by an appellate court of a judgment in a criminal prosecution, as held in State v. Taylor, 130 W.Va. 74, 42 S.E.2d 549, that rule, in my opinion, does not apply to the above recited evidence. The purpose for which it was offered, without sufficient additional evidence, was to create the inference that the defendant committed an abortion on that particular patient. Though evidence of the commission of other abortions by the defendant charged with that offense, if not too remote in point of time, is admissible to show motive or intent and that the specific offense is part of a system of criminal action, but not to establish the guilt of the defendant of the specific offense, the evidence relating to the woman who was followed to her home, in conjunction with the testimony of the four women that the defendant performed other abortions, and the uncertain and speculative evidence with respect to the cause of the miscarriage, undoubtedly influenced the jury in reaching its verdict of guilty.
The admission of incompetent evidence is presumed to be prejudicial and is cause for reversal unless it appears that the verdict of the jury could not have been influenced by it. Slater v. United Fuel Gas Co., 126 W.Va. 127, 27 S.E.2d 436; Mitchell v. Metropolitan Life Insurance Co., 124 W.Va. 20, 18 S.E.2d 803; State v. Stone, 100 W.Va. 150, 130 S.E. 124; Alford v. Kanawha & West Virginia Railroad Co., 84 W.Va. 570, 100 S.E. 402; State v. Tygart Valley Brewing Co., 74 W.Va. 232, 81 S.E. 974; Ewers v. Montgomery, 68 W.Va. 453, 69 S.E. 907; State v. Hull, 45 W.Va. 767, 32 S.E. 240; State v. Musgrave, 43 W.Va. 672, 673, 28 S.E. 813, 814. The facts and the circumstances disclosed by the evidence, in its entirety, do not overcome that presumption. It can not be said that without this improper evidence the jury would or should have found the defendant guilty, or that it did not influence the jury in arriving at that verdict. The rule with respect to the effect of the admission of incompetent or illegal evidence announced and adhered to in the decisions of this Court has been stated in these words: "Where illegal evidence is admitted against the objection of a party, it will be presumed that it prejudices such party; and if it may have prejudiced him, though it be doubtful whether it did or not, it will be cause for the reversal of the judgment; but, if it clearly appear that it could not have changed the result if it had been excluded, it will not be cause for reversing the judgment." Point 1, syllabus, State v. Hull, 45 W.Va. 767, 32 S.E. 240; State v. Musgrave, 43 W.Va. 672, 673, 28 S.E. 813, 814. In Wheeling Mold & Foundry Co. v. Wheeling Steel & Iron Co., 62 W.Va. 288, 57 S.E. 826, 829, this Court used this language concerning the admission of incompetent evidence: "* * * we cannot say what effect such illegal evidence had upon the mind of the jury; and the rule is that, unless it clearly appears that the objecting party was not prejudiced by the illegal evidence, the verdict should be set aside. Dent v. Pickens, 34 W.Va. 240, 12 S.E. 698. If it may have prejudiced the exceptor, though it be doubtful whether it did or not, it will be cause for reversal of the judgment. Poindexter v. Davis, 6 Grat. (Va.) 481; [Southern Mut.] Insurance Co. v. Trear, 29 Grat. (Va.) [255] 259; State v. Kinney, 26 W.Va. 141; Taylor v. [Baltimore & O.] Railroad Co., 33 W.Va. 39, 10 S.E. 29; Webb v. Big Kanawha [& O. R. Packet] Co., 43 W.Va. 800, 29 S.E. 519"; Michaelson v. Cautley, 45 W.Va. 533, 32 S.E. 170; Dent v. Pickens, *557 34 W.Va. 240, 12 S.E. 694, 26 Am.St.Rep. 921; Payne's Case, 31 Grat., Va., 855; Taylor v. Baltimore & Ohio Railroad Company, 33 W.Va. 39, 10 S.E. 29; Hall v. Lyons, 29 W.Va. 410, 1 S.E. 582. The incompetent evidence was highly unfavorable to the defendant, and necessarily tended to create the impression that, after treating the prosecutrix, he continued to act the part of a persistent abortionist. Its apparent effect was to arouse or reinforce in the minds of the jurors an antagonistic attitude and to lead them to believe that he was a constant doer of evil deeds. Nor will it do to say that the same attitude was produced by the admissible testimony of other witnesses that the defendant performed abortions both before and after he treated the prosecutrix. As to the evidence of those abortions the rights of the defendant were safeguarded by the action of the trial court in instructing the jury that it could not affect the question of the guilt or the innocence of the defendant; but as to the improperly admitted evidence no such instruction was given and no such safeguard was provided. It was admitted without restriction and for consideration by the jury for any purpose. In short, the evidence was clearly prejudicial to the defendant and, in my judgment, its admission was reversible error.
The action of the majority in refusing to reverse the judgment of the trial court because "we do not see prejudice" from the evidence improperly admitted is not in conformity to, but is violative of, the above stated rule which is not satisfied by the failure to ascertain, or the inability to detect, the prejudicial effect of incompetent evidence. Contrary to the statement of the majority that "we do not see prejudice therein to set aside the verdict" the rule requires reversal of the judgment and that the verdict be set aside unless it clearly appears that the admission of the incompetent evidence was not prejudicial to the defendant, or if it may have prejudiced him even though it be doubtful whether it did or not. Wheeling Mold & Foundry Co. v. Wheeling Steel & Iron Co., 62 W.Va. 288, 57 S.E. 826; State v. Hull, 45 W.Va. 767, 32 S.E. 240; Dent v. Pickens, 34 W.Va. 240, 12 S.E. 694, 26 Am.St.Rep. 921. It was incumbent upon the majority, to escape the requirement of reversal imposed by the rule and to avoid its violation, to "see" clearly that the evidence was not prejudicial rather than "not to see" that it was. By its inverse action with respect to the improperly admitted evidence, the majority departs from the rule, renders it inoperative in a situation in which it should apply with controlling force, and, contrary to an unbroken line of decisions of this Court, refuses to reverse the judgment and set aside the verdict. The conclusion reached in that manner is in my judgment palpably erroneous and with that conclusion I can not agree.
The hypothetical question, already referred to, propounded to three doctors who testified in behalf of the State, assumed facts not warranted by the evidence and the action of the trial court in permitting it to be asked and answered was prejudicially erroneous. As already pointed out there is no evidence that the defendant injured the foetus in the womb of the prosecutrix by the use of an instrument and the assumption of that fact was mere conjecture. A hypothetical question which assumes facts which are not supported by the evidence should not be submitted to an expert witness, and to permit such question to be asked and answered is reversible error. Cline v. Evans and Tallman, 127 W.Va. 113, 31 S.E.2d 681; Blair v. Clark Coal & Coke Co., 107 W.Va. 507, 148 S.E. 849; Stonegap Colliery Co. v. Hamilton, 119 Va. 271, 89 S.E. 305, 21 Ann.Cas. 1917E, 60; Virginian Railway Co. v. Bell, 118 Va. 492, 87 S.E. 570. See also State v. Painter, W.Va., 63 S.E.2d 86; Williams v. State Compensation Commissioner, 127 W.Va. 78, 31 S.E.2d 546; State v. Taylor, 105 W.Va. 298, 142 S.E. 254; Flood v. Deschamps Motor Co., 203 N.C. 794, 167 S.E. 76.
I am unwilling to acquiesce in a decision which destroys the practice and the personal and professional reputation of a doctor who has devoted many of the best years of his life of almost sixty years to the work of his profession, forever bars him from his chosen field of endeavor, and *558 deprives him of his personal liberty for a substantial portion of his remaining years upon evidence which does not clearly establish his guilt but which instead bases his conviction on grave doubt and mere speculation. Though no culprit whose guilt is established should go unpunished, no person should be condemned as a criminal and punished for a crime when his guilt is shrouded in doubt or uncertainty or rests upon mere speculation or possibility. No man should be convicted, or with my approval will be convicted, upon evidence which amounts to nothing more than an inference that he might be, or possibly is, guilty of the crime of which he is accused. In my judgment this intolerable and unwarranted situation is the result of the present decision. To express my disapproval and my disavowal of its fateful consequences to a defendant whose guilt, though possible, has not been sufficiently established by competent evidence, I record my emphatic dissent.
For the reasons stated I would reverse the judgments of the Intermediate Court and the Circuit Court of Kanawha County, set aside the verdict, and grant the defendant a new trial.
I am authorized to state that Judge RILEY agrees with the views expressed in this dissent.